SNYDER, Appellee,

v.

SNYDER, Appellant.

[Cite as *Snyder v. Snyder* (1995), 105 Ohio App.3d 69.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 94–A–0063.

Decided June 27, 1995.

*Lori B. Lamer,* for appellee.

*Robert E. Naylor,* for appellant.

JOSEPH E. MAHONEY, Judge.

This is an accelerated calender appeal submitted on the briefs of both parties.

Defendant-appellant, Jack W. Snyder, appeals from the judgment of the Ashtabula County Common Pleas Court modifying his child support obligation and finding that a certain credit card obligation was nondischargable in bankruptcy.

Appellant and plaintiff-appellee, Linda M. Snyder, were married on May 21, 1983. By judgment entry dated January 14, 1992, the parties were divorced. Appellee was named residential parent of the parties' two minor children; Jamie Snyder, born January 21, 1981, and Joel Snyder, born November 12, 1985. Appellee's third child was emancipated and resided with her.

Appellant was ordered to pay child support in the sum of $66.56 per week per child, plus two percent poundage, or $583.84 per month. The child support worksheet listed appellant's annual income as $36,000 and appellee's annual gross income as $16,500. The worksheet also listed appellant as paying $1,704 annually in court ordered support for other children.

The judgment entry further provided in part:

"IT IS FURTHER ORDERED that [appellee] shall maintain possession of and title to the residential real estate * * *. [Appellee] * * * shall pay the first mortgage and the second mortgage * * * indemnifying and saving [appellant] harmless thereon. * * *

"IT IS FURTHER ORDERED that [appellee] shall retain possession and title to the 1987 Astro Conversion Van * * * and shall pay the lien on same * * * and shall indemnify and save [appellant] harmless thereon. [Appellant] shall maintain possession of and title to the 1988 Chevrolet Cavalier automobile * * * and shall pay the lien on same * * * indemnifying and saving [appellee] harmless thereon.

" * * *

"IT IS FURTHER ORDERED that [appellee] shall pay the debts to Fashion Bug, JC Penny and her individual Visa account and will indemnify and hold [appellant] harmless thereon. [Appellant] shall pay the debts to the Visa account and Sears account, which debts were joint debts and incurred by the parties, together with his individual Visa and JC Penny accounts, indemnifying and saving [appellee] harmless thereon. Each party shall indemnify and hold the other party harmless on any and all debts incurred in his/her individual name.

" * * *

"IT IS FURTHER ORDERED that neither party shall pay spousal support to the other party."

On July 8, 1992, appellant filed a Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division. The bankruptcy schedule F identified "Lakeview Federal C.U., 2909 State Rd., Ashtabula, OH 44004" as the unsecured creditor of a nonpriority claim listed as "Visa, 1988" in the amount of $4,300. Schedule F also identified appellee as the unsecured creditor of the claim listed as "Reimbursement of Expenses 1992" in the amount of $205. Appellee received notice of the bankruptcy proceedings but did not participate in the hearing. On October 28, 1992, appellant received a general discharge of all dischargeable claims.

On December 22, 1993, appellant filed a motion to modify child support. Appellant argued that a change in circumstances had occurred since his employment at Elkem Metals had been terminated on August 5, 1993.

On January 3, 1994, appellee filed a motion to show cause why appellant should not be held in contempt for, *inter alia*, failure to pay child support and failure to pay a joint Visa debt. Appellee argued that pursuant to the divorce decree, appellant agreed to indemnify and hold her harmless on the Visa debt, and that appellee's failure to comply with the court's order resulted in her being named defendant in an action captioned *Lakeview Fed. Credit Union v. Snyder*, Case No. 93CVF00614, which was filed in the Ashtabula Municipal Court.

According to a filing entitled "Docket Entry" and dated April 18, 1994, a hearing was held on April 13, 1994 to consider all pending motions before the trial court, and "all issues were settled with the exception of the determination of the dischargeability of [appellant's] obligation to [appellee] for a certain credit card obligation under the divorce decree."

At a hearing on August 19, 1994, appellant testified that he believed that the assumption of the joint Visa debt was part of the property division. In contrast, appellee testified that she was unable to pay the Visa bill at the time of the divorce and was still unable to pay the amount, and that she believed the assumption of the debt by appellee was in the nature of spousal support. The parties also presented testimony on the issue of child support.

By judgment entry filed on August 26, 1994, the trial court granted appellant's motion for child support modification. Appellant was ordered to pay child support in the sum of $57.45 per child, per week, plus two percent poundage, and judgment was rendered against appellant for all sums found due to Lakeview Federal Credit Union.

On September 9, 1994, appellant filed a motion for a new trial and a motion for relief from judgment, arguing that there was a mistake in the computation of child support. The trial court denied appellant's motions on October 11, 1994.

Appellant filed a timely notice of appeal and now presents two assignments of error.

In his first assignment of error, appellant asserts that the trial court erred to his prejudice in computing the modification of child support. Appellant sets forth two arguments.

First, appellant argues that the trial court failed to adjust appellant's gross income to reflect the $35 per week in child support that he pays for his son from a previous marriage and to reflect the $4,700 that he is entitled to deduct for his two minor children who live with him and his current wife. We agree in part.

R.C. 3113.215(B)(5) provides:

"When a court computes the amount of child support required to be paid under a child support order * * * all of the following apply:

" * * * *

"(b) The amount of any pre-existing child support obligation of a parent under a child support order * * * shall be deducted from the gross income of that parent to the extent that payment under the child support order * * * is verified by supporting documentation.

"(c) If a parent has other minor children living with him who were born to him and a person other than the other parent who is involved in the immediate child support determination, the court * * * shall deduct an amount from that parent's gross income that equals the number of such minor children times the federal income tax exemption for such children less child support received for them for the year, not exceeding the federal income tax exemption."

■ Our review of the child support worksheet attached to the trial court's judgment entry shows that no deductions were taken from appellant's gross income under either the "Other Child Support Paid" column or the "Residential Children Adj." column. However, appellant testified at the hearing that two minor children born as issue of his current marriage were living with him. Since there was no evidence presented to dispute his claim and R.C. 3113.215(B)(5)(c) does not require verification of his claim, appellant was entitled to have his income reduced by the amount that equals the federal income tax exemption for two children.

■ Appellant also testified that he paid $35 per week for his minor son born as issue of a prior marriage. Although this testimony suggests the existence of a pre-existing child support obligation, there is no verifying documentation in the

record as required by R.C. 3113.215(B)(5)(b). The only supportive evidence in the record is from the initial child support worksheet which indicated that appellant paid an annual amount of $1,704 in court-ordered support for other children. However, there is no evidence to indicate whether this previous child support obligation pertained to the same child for which appellant now claims to pay child support.

Next, appellant argues that the trial court's determination of appellant's estimated gross income and appellee's estimated gross income for 1994 was against the manifest weight of the evidence. Again we agree in part.

In calculating child support payments, R.C. 3113.215 provides:

"(A)(2) 'Gross income' means, except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages * * *.

" * * *

"(B)(5)(a) The parents shall verify current and past income and personal earnings with suitable documents, including, but not limited to, paystubs, employer statements, receipts and * * * tax returns, and all supporting documentation and schedules for the tax returns."

The trial court determined "that at his current rate, [appellant's] estimated earnings for 1994 will be $26,924.00," and that "[a]t her current rate, [appellee's] earnings for 1994 will be $17,387.00." However, appellant testified that when he filed his motion to modify child support, he was receiving $306 per week in unemployment benefits. Appellant also testified that with the commencement of his new employment on January 13, 1994, he earned $400 per week, and that through position advancement, his rate of pay had increased to $440 per week. Appellant presented an employer statement verifying his starting date of January 13, 1994, and his current pay rate of $440 per week. If appellant's maximum rate of $440 per week is used to calculate his gross income for an entire year, his income is calculated at $22,880 per year ($440 times fifty-two weeks). The trial court, however, estimated appellant's gross income at an amount much greater than this calculated amount. Since we cannot find sufficient findings of fact to support the income figure assigned to appellant by the trial court and used in calculating his child support obligation, and there was no statement by the court indicating that it was imputing income, this court is unable to conduct a meaningful review of the trial court's calculations.

As to appellee's gross income, however, there are sufficient findings of fact to support the trial court's calculation of appellee's 1994 gross income.

Appellee testified that she currently earns $8.68 per hour at Conneaut Savings and Loan Company, and that she works between thirty-five and thirty-seven hours per week. An earnings statement for the period ending August 5, 1994 verified appellee's pay rate of $8.68 per hour and listed her work hours as thirty-six regular hours and thirty-five vacation hours. Appellee also testified that she had a temporary job and earned $900 per year as a clerk for the Conneaut Recreations Board. Appellee's 1993 W–2 form issued by the city of Conneaut listed a similar $900 income earned in 1993 as a clerk. If appellee's two sources of income are combined, her calculated gross income ranges between $16,697.60 and $17,600.32 ($900 plus [$8.68 times thirty-five to thirty-seven hours times fifty-two weeks] ). Since the trial court's estimated calculation of $17,387 falls within this calculated range, there are sufficient findings of fact to support the trial court's determination of appellee's gross income.

Accordingly, appellant's first assignment of error has merit as to the trial court's failure to provide this court with sufficient findings of fact necessary to permit a meaningful review of appellant's gross income, and the trial court's failure to adjust appellant's gross income pursuant to R.C. 3113.215(B)(5)(c).

In his second assignment of error, appellant asserts that the trial court erred to his prejudice in determining that the indebtedness of the Lakeview Federal Credit Union Visa was a nondischargeable debt.

Section 523, Title 11, U.S.Code provides:

"(a) A discharge under section 727 * * * of this title does not discharge an individual debtor from any debt—

" * * *

"(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record * * * but not to the extent that—

" * * *

"(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]"

State and federal courts have concurrent jurisdiction to determine whether a debt is excepted from discharge under Section 523(a)(5), Title 11, U.S.Code. *Barnett v. Barnett* (1984), 9 Ohio St. 3d 47, 9 OBR 165, 458 N.E.2d 834; *Dozer v. Dozer* (1993), 88 Ohio App.3d 296, 623 N.E.2d 1272. Although state law cannot be completely ignored, "[t]he issue of when an assumption of joint debts is 'in the nature of alimony, maintenance, or support' as opposed to a

division of communal property is to be determined by federal bankruptcy law." *In re Calhoun* (C.A.6, 1983), 715 F.2d 1103, 1107.

In *Calhoun,* the Sixth Circuit Court of Appeals set forth a three-part test to determine whether a debt was in the nature of support and, thus, not dischargeable. Initially, the bankruptcy or state court must determine "whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts." (Emphasis *sic.*) *Id.* at 1109. If the bankruptcy or state court finds "that assumption of the debts was intended as support it must next inquire whether such assumption has the effect of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." (Emphasis *sic.*) *Id.* If the court finds "that the loan assumption has the effect of providing necessary support, the Bankruptcy [or state] Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110. The party objecting to the discharge has the burden of proving his or her objection. Bankr.R. 4005; *Calhoun, supra,* 715 F.2d at 1107, citing *In re Daiker* (Bankr.Ct. Minn.1980), 5 B.R. 348, 351–352.

Here, the trial court determined that "the sum of $5,157.89, together with interest, remains due and owing to Lakeview Federal Credit Union, representing the balance on the Visa account which [appellant] was required to pay under the final decree," and that "considering the nature and purpose of these debts, the great disparity in the parties' incomes at the time of the divorce, and the disparity in the allocation of debt between the parties, [appellant's] assumption of the Visa account * * * [is] in the nature of support and maintenance and, therefore, should not be dischargeable in bankruptcy."

We disagree. When the facts of this case are applied to the test set forth in *Calhoun,* this court is unable to conclude that there was sufficient evidence in the record to conclusively determine that assumption of the joint Visa debt at the time of the divorce decree was in the nature of spousal support or maintenance.

First, there is insufficient evidence to support a finding that the court or the parties intended to create an obligation to provide support through appellant's assumption of the joint Visa debt. The divorce decree explicitly stated that neither party was to pay spousal support to the other party. Although this language standing alone does not preclude a finding of an intent to create a spousal support obligation, a reading of this language in context of the entire divorce decree indicates that appellant's assumption of the joint Visa debt was in the nature of allocating property. Appellee testified that she assumed approxi-

mately $37,000 in debt in comparison to appellant's $9,800. However, just as the valuation and division of a particular marital asset or liability must be viewed in the context of the entire property division, *Jelen v. Jelen* (1993), 86 Ohio App.3d 199, 620 N.E.2d 224; *Sammons v. Sammons* (June 30, 1994), Trumbull App. No. 92-T-4731, unreported, 1994 WL 321639, the disparity in the allocation of the parties' debt must also be viewed with the entire division of property. The parties were given and maintained possession of their respective personal property, bank accounts, and retirement or pension plans. Appellee obtained title to the marital residence and the Astro Conversion Van, and she assumed the first and second mortgage on the residence, the loan on the van, and the debts owing on three credit cards, one of which was paid off prior to the divorce. In contrast, appellant received title to the Cavalier automobile, and he assumed the debts on the same automobile, two of his individual credit cards, and two joint credit cards. The totality of these circumstances suggests that the disparity in the debt allocation was an attempt to achieve an equitable division of property rather than an intent to create a spousal support obligation.

The disparity of the parties' income also cannot be viewed in isolation. For purposes of the child support worksheet, the parties stipulated at the time of the divorce that appellant's gross income was $36,000 and appellee's gross income was $16,500. However, the parties' income was only one of several factors enumerated in R.C. 3105.18(C)(1) to be considered by the court in determining an award of spousal support. Thus, this factor cannot be viewed in isolation to prove that appellant's assumption of the joint Visa debt was intended to somehow balance the relative incomes of the parties.

Additionally, the parties presented conflicting testimony at the hearing regarding their respective beliefs as to the nature of appellant's assumption of the joint Visa debt at the time of the divorce. Although this testimony may be relevant evidence for the trial court to consider and deference must be given to the trial court as to their credibility, their subjective assertions are insufficient to clearly indicate an intention to create a spousal support obligation through appellant's assumption of the joint Visa debt when the language of the document is clear and there is no other evidence to the contrary. Without sufficient evidence, the trial court cannot create a nondischargeable spousal support obligation where the divorce decree did not create one. Thus, the inquiry ends at the first part of the test set forth in *Calhoun.*

Even if we assume that appellant's assumption of the joint Visa debt was intended for support, there is no evidence that the support was necessary to meet the daily needs of appellee or the parties' two minor children. In a broad sense, support results even if the assumption of the marital debt is actually a division of property because funds are made available for other purposes including neces-

sary support. *Calhoun, supra,* 715 F.2d at 1108. However, "[i]t is clear from the statute and legislative history that Congress could not have intended that all assumptions of joint debts would be nondischargeable." *Id.*

Several courts have held that the assumption of a mortgage loan or automobile loan is likely to disrupt the former spouse's ability to maintain the daily necessities, including food, housing, and transportation. See *Pearl v. Pearl* (1990), 69 Ohio App.3d 173, 590 N.E.2d 315; *Clark v. Clark* (1987), 40 Ohio App.3d 177, 532 N.E.2d 158; *Smith v. Smith* (June 30, 1992), Ashtabula App. No. 91–A–1665, unreported. Appellee's claim that appellant's assumption of the joint Visa debt was in the nature of spousal support because it enabled her to take better care of her children, however, is more tenuous. Appellee's 1991 federal income tax form and W–2 statement indicate an earned income of $16,898.62 and deductions in the amount of $2,492.62 (federal income tax $527.60; state income tax $393.43; local income tax $278.83; social security tax $1047.72; medicare tax $245.04). Based on these figures, appellee had a net annual income after taxes of $14,406 or $1200.50 per month. Since appellee received $576.85 per month in child support ($66.56 times fifty-two weeks divided by twelve months), she had a total monthly income of $1,777.34. Appellee listed her monthly expenses, which included groceries, clothing, utilities, mortgage, and car expenses, as totaling $1,413.29. The result of these two factors is a disposable monthly income at the time of the divorce of $364.05. Thus, the practical effect of appellant's assumption of the joint Visa debt was not to ensure appellee's daily needs or those of the parties' two minor children, and the inquiry ends at the second part of the test set forth in *Calhoun.*

Accordingly, appellant's second assignment of error has merit as there was insufficient evidence to conclude that appellant's assumption of the joint Visa debt was in the nature of spousal support. However, this may be one of those situations where appellant may win the battle but lose the war because the trial court is certainly free to consider the dischargeable nature of this debt when recalculating appellant's child support obligation pursuant to the first assignment of error.

Based on the foregoing, appellant's first and second assignments of error have merit, and the trial court's judgment is reversed. The matter is remanded to the trial court for further proceedings in accordance with law and not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, P.J., and NADER, J., concur.