OPINION
In this accelerated calendar appeal submitted on the record and briefs of the parties, appellant, Betty Louise Howe, appeals from a judgment of the Portage County Court of Common Pleas, Domestic Relations Division, which determined that a debt obligation accepted by appellant's ex-husband, appellee, Terrence J. Howe, involved the parties' distribution of marital property and, thus, was subject to discharge in bankruptcy. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. The parties were married on May 18, 1972. Four children were born as issue of said marriage: Regina M. (d.o.b. 11/17/72); Chad M. (d.o.b. 3/1/75); Megan R. (d.o.b. 12/10/78); and Deanna L. (d.o.b. 4/10/82). On January 24, 1992, the parties filed a petition in the Portage County Court of Common Pleas, Domestic Relations Division, for dissolution of marriage. The petition incorporated a separation agreement between the parties.
Under the terms of the separation agreement, appellee agreed that appellant would be the residential parent of the minor children subject to his retention of visitation rights pursuant to the court's standard order of visitation. The parties agreed that appellee was making $18.75 per hour and that appellant made approximately $300 per month. For purposes of child support, appellee agreed to pay $65 plus poundage per week per child for so long as each child resided with appellant up to the age of eighteen. The parties further recognized that one of their children was developmentally disabled and appellee agreed to continue to pay child support for as long as that child resided with appellant. He further agreed to maintain health insurance for his family as well as maintaining an adequate level of life insurance for the support of the children should he die prematurely.
As to the property distribution under the separation agreement, appellee agreed to transfer any and all interest that he had in the marital residence to appellant as well as the vast majority of the household furnishings and personal property therein. Appellee retained his personal clothing and effects including an unspecified amount of hand and power tools. Appellant agreed to assume the sole responsibility for all future costs associated with the marital residence including insurance, utilities and taxes. She also assumed responsibility to pay the first mortgage on the property that, at the time, totaled approximately $37,000. Appellee assumed responsibility to pay the second mortgage that then totaled approximately $30,000. The house had a total value at that time of between $85,000 to $90,000. There is no indication on the record as to the value of the personal effects in the home.
The agreement acknowledged that appellee was the sole proprietor of a pizza business that the couple purchased during their marriage. He agreed to assume an unspecified amount of debt incurred during the operation of the business including the second mortgage on the marital residence that was used to finance the purchase of the pizza business. Appellee agreed to indemnify and hold appellant harmless for any and all debt from the business. No dollar figure was ever placed as to the value of the pizza business. However, appellee would later admit that the couple purchased the business in 1990 for $27,900.
Appellee retained title and agreed to assume loans on a 1979 Monte Carlo which he later testified that he sold for $300. Appellant was given title to and accepted sole responsibility to repay the loan for a 1989 Aerostar. She later sold this vehicle for an unspecified price and obtained a more affordable automobile.
Appellant was given the unspecified funds found in the parties' joint bank accounts and appellee agreed to assume payment on a number of the former couples' credit card bills that totaled between $3,000, appellant's estimate, to $5,000, appellee's estimate. Appellee also agreed to pay nearly $1,200 toward the children's education for that year. Appellant agreed to waive any and all claims she might have in appellee's vested pension rights that then totaled approximately $25,000.
Finally, the separation agreement contained the following provision as to spousal support:
 "Each party to this agreement specifically waives any and all claims to spousal support against the other."
 By judgment entry filed March 23, 1992, the trial court officially dissolved the marriage between the parties. The trial court noted that the parties acknowledged under oath that they were voluntarily entering into the separation agreement attached to their petition seeking a dissolution of their marriage and the court incorporated said agreement as a part of its decree.
Since the termination of their marriage, the parties have had occasions to dispute issues related to appellee's child support obligation, which party would claim the children for income tax purposes, and the division of assets from an employee stock ownership plan that appellee participated in during the course of the parties' marriage. The current dispute began October 24, 1996, when appellant filed a motion seeking a contempt order for appellee's failure to pay the second mortgage on the marital residence. The trial court initially refused to act on appellant's contempt motion because appellee previously filed a personal Chapter 7 bankruptcy petition and named the holder of the second mortgage and appellant as creditors. On December 31, 1996, the United States Bankruptcy Court for the Northern District of Ohio granted appellee a general discharge as to all his debts.
On January 8, 1997, appellant filed a motion in the bankruptcy court requesting an emergency stay so that the Portage County Court of Common Pleas, Domestic Relations Division, could determine the issue of whether an exception to the discharge exists. Specifically, appellant sought a determination from the trial court as to whether appellee's payment of the second mortgage to the marital residence amounted to a payment of spousal support, and, thus, nondischargeable in bankruptcy, or a dischargeable portion of the parties' division of marital property. On January 31, 1997, the bankruptcy court granted appellant's motion for stay to permit the trial court to proceed with the contempt proceeding and determine whether the debt at issue constituted an exception to discharge under11 U.S.C. Section 523(a) (5).
On May 12, 1997, a magistrate with the Trumbull County Court of Common Pleas held a hearing as to appellant's contempt motion. During the hearing, both parties expressed their understanding of the separation agreement. Appellant asserted that the parties intended a fifty-fifty split of the assets and that appellee's payment of the second mortgage on the marital residence was meant as spousal support. She further asserted that the bank had foreclosed on the second mortgage and that she would be unable to keep the house if appellee failed to pay on the loan. As proof of her position, appellant noted the disparity in the parties' income. She further noted that the separation agreement contained provisions where appellee agreed to indemnify and hold her harmless for any debts of the pizza business including the second mortgage that was used to purchase the business.
Appellee testified that his pizza business is no longer in operation and that his other job required him to take a cut in pay. He stated that he paid on the second loan for as long as he could until he was forced into bankruptcy. He further testified that he agreed to give his ex-wife a far greater portion of the marital assets and accepted the responsibility for the majority of the parties' debts in lieu of having to pay spousal support. Thus, appellee argued that his acceptance of the obligation to pay the second mortgage was not alimony but, rather, a part of the parties' property division. As evidence of his position, appellee noted the provision in the separation agreement that stated that the parties waived any claim to spousal support.
Following the hearing, the magistrate determined that the balance still due on the business installment loan secured by the second mortgage was not in the nature of alimony and, thus, was dischargeable in bankruptcy. Appellant filed timely objections with the trial court and asserted that the magistrate's decision was against the manifest weight of the evidence and contrary to law. The trial court subsequently reviewed the transcript of the proceeding before the magistrate and, after permitting the parties to present written and oral arguments as to their respective positions, overruled appellant's objections. In a final judgment entry filed April 1, 1998, the trial court ruled that the payments appellee made on the second mortgage were not in the nature of spousal support.
Appellant filed a timely notice of appeal from the trial court's final judgment entry. She now asserts, in her sole assignment of error, that the trial court erred in failing to recognize that appellee's obligation to pay the second mortgage was intended as spousal support and, thus, not dischargeable in bankruptcy.
Section 523, Title 11, U.S. Code states:
 "(a) A discharge under section 727 * * * of this title does not discharge an individual debtor from any debt —
"* * *
 "(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record * * * but not to the extent that—
"* * *
 "(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support."
 Both state and federal courts have concurrent jurisdiction to determine whether a debt is exempted from discharge under Section 523(a) (5), Title 11, U.S. Code. Snyder v. Snyder (1995), 105 Ohio App.3d 69, 76, citing Barnett v. Barnett
(1984), 9 Ohio St.3d 47 and Dozer v. Dozer
(1993), 88 Ohio App.3d 296. Although state domestic relations law cannot be completely ignored, "[t]he issue of when an assumption of joint debts is `in the nature of alimony, maintenance, or support' as opposed to a division of communal property is to be determined by federal bankruptcy law." In re Calhoun (C.A.6, 1983), 715 F.2d 1103, 1107; See, also, Snyder, 105 Ohio App.3d at 76-77.
In Calhoun, the Sixth Circuit Court of Appeals sets forth the following three-part test to determine whether the assumption of a debt was in the nature of spousal support and, thus, not dischargeable. Initially, the court must consider "whether * * * the parties to the divorce intended to create an obligation to provide support through the assumption of the joint debts." (Emphasis sic.) Id. at 1109. In making this initial determination, the trier of fact may consider "any relevant factor" from which to discern the parties' intent. Id. If the court determines that the assumption of the debt "was intended as support it must next inquire whether such assumption has theeffect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." (Emphasis sic.) Id. Finally, if after the first and second parts of the Calhoun test have been met, the court must determine that "the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support." Id. at 1110. The party objecting to the discharge maintains the burden of establishing the nondischargeability of the debt. Snyder,105 Ohio App.3d at 77, citing Calhoun, 715 F.2d at 11[11].
In the case sub judice, the trial court ultimately determined that appellant did not meet her burden of proof in establishing the first prong of the Calhoun test. Upon reviewing the record on appeal, it is evident that both parties make compelling arguments in support of their respective position as to their "intentions" when they signed their separation agreement back in 1992. We recognize that no one factor considered in isolation is dispositive of whether the parties intended the payment of a marital debt as support or a part of the parties' property division. See Smith v. Smith (1992), 81 Ohio App.3d 641, 643
(recognizing that language in a separation agreement forfeiting all spousal support rights is not determinative of the dischargeability of a debt); Mugrage v. Mugrage (March 24, 1998), Washington App. No. 96CA36, unreported, 1998 Ohio App. LEXIS 1204 (where a hold harmless clause in a separation agreement was not dispositive of issue regarding the dischargeability of a debt). It is evident, however, that at the time of the separation agreement, neither party contemplated the ramifications if either one of them filed a petition for bankruptcy.
Upon review of the record, this court may very well disagree with the trier of fact's resolution of the factual conflict before it in determining that the debt in question was dischargeable. On the surface, it appears that the discharge of appellee's debts in bankruptcy creates a windfall for him at the expense of appellant and the parties' children. However, a separation agreement is initially a contract between the parties. This particular separation agreement specifically stated that "each party waives any and all claims to spousal support." Basic contract law precludes parole evidence on this point unless mutual mistake is alleged. In that case appellant has the burden of disproving the otherwise clear meaning of that provision. We note that appellant bore the burden of establishing the nondischargeability of the debt, and the record on appeal is insufficiently detailed as to the value of many items of marital property previously divided by the parties from which to disturb the trial court's judgment. Ultimately, the trier of fact was in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. An appellate court is not in the position to reverse a trial court's factual determination if it is supported by some competent, credible evidence. See,e.g., Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Accordingly, appellant's sole assignment of error is without merit as there is insufficient evidence for this court to overturn the trial court's determination that appellee's assumption of the second mortgage was in the nature of the parties' division of marital property. However, we note, as we did in Snyder, that this "may be one of those situations where appell[ee] may win the battle but lose the war because the trial court is certainly free [upon proper motion] to consider the dischargeable nature of this debt when recalculating appell[ee's] child support obligation * * *." Id. at 79.
Based on the foregoing, the judgment of the trial court is affirmed.
 _____________________________ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J.,
NADER, J.,
concur.