DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Gallia County Court of Common Pleas which granted in part and denied in part Second Party-Appellant Amy M. Brown's motion for modification of child support and reallocation of the federal tax dependency exemption that was originally granted to First Party-Appellee Douglas O. Brown.
Appellant presents us with three assignments of error. In her First Assignment of Error, she argues that the trial court erred in calculating appellee's gross income and in granting appellee a deviation in child support. In her Second Assignment of Error, she maintains that the trial court erred in computing her self-generated income. In her Third Assignment of Error, she argues that the trial court erred in failing to rule on her motion to reallocate the federal tax dependency exemption that was originally granted to appellee.
We sustain appellant's First and Third Assignments of Error and overrule appellant's Second Assignment of Error. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings not inconsistent with this opinion.
I. The Proceedings Below
In October 1995, the Gallia County Court of Common Pleas entered a decree of dissolution which terminated the marriage of Second Party-Appellant Amy M. Brown and First Party-Appellee Douglas O. Brown.
Pursuant to this decree, the parties entered into a shared parenting plan for the care of their minor child. This shared parenting plan, which was based on the parties' respective incomes, required appellee to pay $5,166.86 per year in child support. However, because the child spent approximately half his time with appellee, the parties agreed to a deviation, and reduced appellee's obligation by approximately seventeen percent, to $4,290 per year. The plan also permitted appellee to claim the child as a dependent on his federal income-tax return.
A. Appellant's Two-Part Motion
In March 2000, appellant filed a motion for modification of child support and reallocation of the federal tax dependency exemption. Appellant made two requests in this motion. First, she requested that appellee's child-support obligation be increased because appellee's income, derived from a fifty-percent partnership in an insurance agency, had nearly doubled since their divorce. Appellant maintained that "[f]urther evidence will be submitted at the time of the hearing on this matter supporting the fact that there has been a substantial change in circumstances with regard to the financial ability of [appellee] to pay additional child support." Second, appellant requested that the federal tax dependency exemption be reallocated to her.
B. Evidence and Argument Regarding Appellee's Ability to Pay Additional Child Support.
As the proceedings wore on, it became clear that there was not a consensus as to what precisely appellee's gross income was for 1999. From the record, there are four markedly different figures: that stated on appellee's federal income-tax return, appellant's version, appellee's version, and the lower court's version.
1. Appellee's Federal Income-Tax Return
In May 2000, discovery requests were made between the parties. Among other things, appellee produced a copy of his 1999 federal income-tax return. This return indicates that he had $43,545 in gross income. This number was arrived at as follows. First, his income was listed: $22,290 in "[w]ages, salaries, tips, etc."; $26 in tax-exempt interest; and $24,521 in partnership income. These figures were added together to total $46,837.
Second, two deductions were listed: $292 in business losses, and $3,000 in capital losses. These figures were added together to total $3,292.
Third, the total deductions were subtracted from the total income. Thus, according to his income-tax return, appellant's final gross income was $43,545.
2. Appellant's Version
In November 2000, appellant filed a memorandum in support of her motion. In this memorandum, she argued that appellee's gross income for 1999 was $48,304.08. While it is not entirely clear how appellant arrived at this figure, it appears that she did the following.
First, she looked to appellee's bank statements, noting that appellee had made twelve periodic monthly deposits of $3,275.34, which amounted to $39,304.08. Thus, appellant maintained, appellee's partnership income was more accurately stated as $39,304.08, not $24,521, as it was stated in his income-tax return.
Second, she argued that the $3,000 in capital losses was an improper deduction in calculating child support. Accordingly, she appears to argue that $3,000 should be added to what she determined was appellee's partnership income. The sum of these two numbers is $42,304.08.
Third, she argued that appellee realized a benefit from the use of an automobile owned by his company, in the amount of $6,000. Appellant argued that this too should be included in appellee's gross income. Thus, according to appellant, appellee's final gross income was, "at the very least, * * * $42,304.08 plus $6,000" — $48,304.08.
We also note that appellant attached to this memorandum a child-support worksheet in which she indicated that the 1999 gross income from her real-estate business was $10,000.
3. Appellee's Version
In December 2000, appellee filed a memorandum in opposition to appellant's motion. In this memorandum, he argued that his gross income was solely that income derived from the partnership as stated in his 1999 federal income-tax return, $24,521.
4. The Trial Court's Version
In January 2001, after a hearing was held on appellant's motion, the trial court issued its judgment entry, finding that the child-support obligation of appellee should indeed be increased. However, in calculating the child support, it used none of the foregoing figures. Instead, it used its own, stating the following: "The Court finds the 1999 tax record reveal [sic] [appellant's] gross income is in the sum of [$42,403]." The lower court then used this figure to calculate appellee's increased child-support obligation to be $5,912.61 a year.
Additionally, the trial court granted appellee a deviation, reducing appellee's obligation by approximately twenty-five percent, to $4,451.21 a year. In so doing, the trial court did not explain its reasoning. Instead, it merely noted that a "necessary adjustment" had to be made. The trial court never ruled on appellant's request to reallocate the federal tax dependency exemption.
II. The Appeal
Appellant timely filed an appeal with this Court, assigning the following errors for our review.
First Assignment of Error:
 THE TRIAL COURT ERRED IN GRANTING A DEVIATION IN CHILD SUPPORT WITHOUT COMPLYING WITH SECTION 3113.21.5(B)(1)(A) AND (B).
Second Assignment of Error:
 THE TRIAL COURT ERRED IN THE COMPUTATION OF CHILD SUPPORT BY FAILING TO CORRECTLY COMPUTE "SELF-GENERATED INCOME" OF DEFENDANT-APPELLANT PURSUANT TO SECTION 3113.21.5(A)(3).
Third Assignment of Error:
 THE TRIAL COURT ERRED IN FAILING TO RULE ON DEFENDANT-APPELLANT'S MOTION TO REALLOCATE DEPENDENCY EXEMPTION.
We will evaluate appellant's assignments of error seriatim.
III. The Gross Income and Deviation Calculations
In appellant's First Assignment of Error, she makes two challenges to the calculations used by the trial court in modifying appellee's child-support obligation. First, she argues that the trial court erred in calculating appellee's gross income. Second, she maintains that the lower court erred in granting appellee a deviation in child support.
A. Statutory Framework
R.C. 3113.215 sets forth the scheme a trial court must follow in calculating and ordering child support.[1] See Pauly v. Pauly (1997),80 Ohio St.3d 386, 686 N.E.2d 1108. While "the terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects," it is well settled that a trial court's decision regarding child-support obligations falls within its discretion and will not be disturbed absent a showing of an abuse of discretion. Marker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus; see Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028, 1030.
When confronted with a motion for modification of a child-support order, the trial court must engage in a two-step process:
 "(1) first, a determination of whether there has been a substantial change in circumstances, and (2) if so, a [re-determination] of the amount of child support in accordance with the guidelines in R.C. 3113.21 to R.C. 3113.219." Leonard v. Erwin (1996), 111 Ohio App.3d 413, 416, 676 N.E.2d 552, 554.
If the modification is based on a change in income, as it is in the case sub judice, the lower court must use a child-support-computation worksheet to recalculate the modified support obligation in order to determine whether a substantial change in circumstances has occurred. See R.C. 3113.215(B)(4). If the new worksheet calculations change the previous order by at least ten percent, then the child-support order must be modified. See DePalmo v. DePalmo (1997), 78 Ohio St.3d 535,679 N.E.2d 266, paragraph two of the syllabus; accord Trenkamp v. Trenkamp (Dec. 1, 2000), Hamilton App. No. C-000203, unreported. Once that change has been demonstrated, the lower court may then make the modification in accordance with the statutory factors and guidelines.
In re-determining the amount of child support in accordance with the statutory guidelines, the trial court should utilize both the basic child-support schedule and the worksheets. See DePalmo v. DePalmo,78 Ohio St.3d at 535, 679 N.E.2d at 266.
Additionally, "[a] trial court may deviate from the amount of child support calculated * * * if the court finds that the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child." Pauly v. Pauly,80 Ohio St.3d at 390, 686 N.E.2d at 1111; see R.C. 3113.215(B)(4) and 3113.215(B)(6).
As appellee correctly points out in his brief to this Court, R.C.3113.215(B)(6) controls in cases, such as this, that involve shared parenting plans. See, generally, Wyatt v. Wyatt (Dec. 4, 2000), Butler App. No. CA2000-02-011, unreported; Hubin v. Hubin (June 30, 2000), Franklin App. No. 99AP-1156, unreported; Caniglia v. Caniglia (May 15, 2000), Butler App. No. CA99-10-180, unreported; Mueller v. Mueller (Apr. 3, 2000), Butler App. No. CA99-07-123, unreported; Luke v. Luke (Feb. 20, 1998), Lake App. No. 97-L-044, unreported; see Pauly v. Pauly,80 Ohio St.3d at 386, 686 N.E.2d at 1108.
This provision provides, inter alia, that a deviation may be granted on the grounds of "[t]he amount of time that the children spend with each parent * * *." R.C. 3113.215(B)(6)(b)(i); see Pauly v. Pauly,80 Ohio St.3d at 386, 686 N.E.2d at 1108.
In granting such a deviation, "the trial court must include findings of fact to justify its conclusion that the amount of child support in the basic child-support schedule and worksheet is unjust, or inappropriate, and not in the child's best interest." (Emphasis added.) Trenkamp, supra; see Pauly v. Pauly, 80 Ohio St.3d at 390, 686 N.E.2d at 1111; R.C. 3113.215(B)(4) and 3113.215(B)(6)(a).
B. The Trial Court's Calculations
In the case sub judice, we are at a loss as to how the trial court calculated appellee's gross income. Indeed, appellee himself stated that "How the court arrived at the $42,403 figure from the 1999 tax return is unclear."
Nevertheless, both parties seem to suggest that the trial court meant to adopt appellant's calculation, less the $6,000 for the use of a company-owned automobile. But, in so doing, it inadvertently transposed the numbers four and three: instead of using $42,304.08, the figure proffered by appellant, the trial court used $42,403. While this may indeed be the case, it is mere conjecture.
Indeed, this conclusion is inconsistent with the trial court's cursory explanation that the figure was derived from appellee's "1999 tax record." First, this number does not appear in appellee's income-tax return or any of its worksheets. And second, if this was indeed derived from appellant's calculations, appellant stated she used appellee's bank records, not his tax records, to calculate appellee's gross income.
Additionally, the trial court did not journalize, nor even allude to, its reasoning for granting appellee a deviation. Rather, it merely stated that a "necessary adjustment" had to be made. Once again, appellee admits that the trial court erred: "Appellee * * * concedes the court failed to set forth facts in compliance with [R.C. 3113.215(B)(6)(a)] * * *. The trial court failed to set forth specific reasons why the deviation was appropriate."
This clearly is not in compliance with the requirement that the trial court must journalize its findings of fact. See Trenkamp, supra; Pauly v. Pauly, 80 Ohio St.3d at 390, 686 N.E.2d at 1111; R.C. 3113.215(B)(6)(a).
In sum, we find that the trial court abused its discretion in determining appellee's gross income and granting him a deviation because the trial court did not literally and technically follow the applicable material procedures in R.C. 3113.215. Moreover, we are largely unable to evaluate, in any meaningful detail, the decision of the trial court because a substantial portion of its findings were unexplained. See, e.g., Snyder v. Snyder (1995), 105 Ohio App.3d 69, 663 N.E.2d 695
(reversing the trial court because, inter alia, it did not adequately support the gross-income figure it assigned to obligor).
Therefore, we SUSTAIN appellant's First Assignment of Error.
IV. Appellant's Self-Generated Income
In appellant's Second Assignment of Error, she makes a third challenge to the calculations used by the trial court in modifying appellee's child-support obligation. Here, she argues that the trial court erred in computing her self-generated income, pursuant to R.C. 3113.215(A)(3).
In appellant's own worksheet attached to her memorandum in support of her motion to increase appellee's child-support obligation, she stated that her self-generated income in 1999 was $10,000.
However, at the hearing on her motion, she stated that she had actually, due to business expenses, incurred a $5,000 loss. Despite this testimony, the lower court, without explanation, used the $10,000 figure stated in her worksheet.
Appellee suggests that the invited-error doctrine should apply in this situation to estop appellant from arguing that the number she originally provided the trial court is erroneous.
Under the invited-error doctrine, a party is not permitted to take advantage of an error that she herself invited or induced the court to make. See State ex rel. Soukup v. Celebrezze (1998), 83 Ohio St.3d 549,700 N.E.2d 1278. While appellant may have mistakenly stated her gross income as $10,000 in her worksheet, she clearly testified at the hearing that she actually incurred a loss of $5,000.
Thus, appellant contradicted her earlier statement prior to the trial court making any decision. This amounts to a factual determination between conflicting evidence. The invited-error doctrine does not apply in such circumstances. See id.
Accordingly, we turn to the apparent decision of the trial court to use the figure appellant initially provided in her worksheet instead of that provided by her at the hearing.
R.C. 3113.215(A)(3), defines "self-generated income" as follows:
 [G]ross receipts received by a parent from self-employment, proprietorship of a business, * * * minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.
(Emphasis added.) R.C. 3113.215(A)(3).
R.C. 3113.215(A)(4)(a) defines "Ordinary and necessary expenses incurred in generating gross receipts" as "actual cash items expended by the parent or the parent's business and includes depreciation expenses of replacement business equipment as shown on the books of a business entity." R.C. 3113.215(A)(4)(a).
However, "`ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." R.C. 3113.215(A)(4)(b).
The sole evidence in the record pertaining to appellant's argument that her gross income was not actually $10,000, as was originally stated in her worksheet, but was a loss of $5,000, is the following exchange between her and her attorney at the hearing on her motion:
Q. What was your gross income * * * in 1999?
A. Um, I believe it was twelve seventy five.
Q. And you had certain business expenses?
A. Yes.
 Q. And what was the net result of your * * * gross income less any business expenses?
A. I had a little over a $5,000.00 loss.
Absent from the record is any evidence demonstrating that these purported "business expenses" were "[o]rdinary and necessary expenses incurred in generating gross receipts," and were not "depreciation expenses" or "other noncash items." R.C. 3113.215(A)(4)(b).
Accordingly, we cannot say that the trial court abused its discretion in finding that appellant's self-generated income was that originally stated in appellant's worksheet, $10,000, and not that stated in her testimony during the hearing on her motion, a $5,000 loss. See, generally, State ex rel. Athens County Child Support Enforcement Agency v. Hall (Apr. 15, 1993), Athens App. No. 1545, unreported (finding that the trial court did not abuse its discretion in calculating the appellant's self-generated income because "the trial court's decision does not evidence an unreasonable, arbitrary, or unconscionable attitude").
Therefore, we OVERRULE appellant's Second Assignment of Error.
V. The Federal Tax Dependency Exemption
In appellant's Third Assignment of Error, she argues that the trial court erred by failing to rule on, and thereby effectively overruled, her request to reallocate the federal tax dependency exemption.
"As a general rule, a motion that is outstanding at the time judgment is entered is presumed to have been overruled." State v. Mollick (Aug. 23, 2000), Lorain App. No. 99CA007381, unreported; accord Solon v. Solon Baptist Temple, Inc. (1982), 8 Ohio App.3d 347, 457 N.E.2d 858.
Appellant agrees that this request was effectively denied. Nevertheless, she argues that "the evidence before the court supported a reallocation of the exemption."
The analysis for evaluating the allocation of the federal tax dependency exemption is well settled.
 The allocation of the dependency exemption provided by [the federal tax code] may be awarded to the noncustodial parent when that allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child. * * *. In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates.
(Emphasis added.) Singer v. Dickinson (1992), 63 Ohio St.3d 408,588 N.E.2d 806, paragraphs two and three of the syllabus.
Thus, one of the factors a trial court should review in evaluating the allocation of the federal tax dependency exemption is the parent's gross income. See id. As we have found that this case should be remanded for a re-determination of appellee's gross income, we are unable to properly evaluate, pursuant to the foregoing analysis, the trial court's apparent decision to deny appellant's request to reallocate the dependency exemption.
Accordingly, we SUSTAIN appellant's Third Assignment of Error.
VI. Conclusion
For the foregoing reasons, we SUSTAIN appellant's First and Third Assignments of Error and OVERRULE appellant's Second Assignment of Error.
Therefore, the judgment is REVERSED and this action is REMANDED to the Gallia County Court of Common Pleas to: (1) recalculate appellee's support obligation in accordance with the procedures set forth in R.C.3113.215 and not inconsistent with this opinion; and (2) to reevaluate appellant's request to reallocate the dependency exemption pursuant to the analysis set forth in Singer v. Dickinson, 63 Ohio St.3d at 408,588 N.E.2d at 806, and not inconsistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the GALLIA COUNTY COURT OF COMMON PLEAS to carry this judgment into execution. Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment Only.
Kline, J.: Dissents with Dissenting Opinion.
[1] Although this statute is applicable for purposes of this appeal, we note that it has been subsequently repealed.