JOURNAL ENTRY and OPINION
Appellant Marla Larkey appeals a decision by the trial court in favor of appellee Gregg Larkey in a divorce action. Appellant assigns six errors for our review.[1]
Having reviewed the record and the legal arguments of the parties, we affirm the trial court's decision subject to the within modifications. The apposite facts follow.
On September 24, 1989, appellee and appellant married and had two children, Lindsay (D.O.B. 12/24/90) and Brandon (D.O.B. 03/23/93). Appellee earned $50,000 per year as a pipefitter. Appellant, 40 years old at the time of the divorce, historically worked at home as a part-time secretary earning an estimated $20,000 per year. For the better part of the marriage, she took care of the children, having quit her previous job at the Spohn Service Corporation.
At the time of the marriage, appellee owned real estate located at 4111 Torrington Avenue in Parma, Ohio. The property had been purchased on March 3, 1987 for $57,000. Appellee paid a down payment of $15,000 and obtained a mortgage for the remaining $42,000. Before moving into the home, appellee spent $4,812.76 on improvements to the home including plumbing, insulation, landscaping, installation of a new air conditioner, humidifier, floors, and ceiling, and various electrical repairs. Appellant helped appellee clean the house and haul items from the house into the garage. Appellee moved into the Torrington Avenue home in August or September 1987 and appellant moved in shortly thereafter. After the marriage, appellant contributed to the couple's bills. Appellee paid the mortgage on the home and continued to do so after the parties' marriage. At the time of the marriage, appellee had reduced the mortgage on the home by $6,591.
In May 1990, appellant transferred the property into both parties' names. In April 1991, both parties took out a $25,000 home equity line of credit on the property. They purchased a 1992 Ford Explorer in 1991 at a cost of approximately $20,000. Between the date of the parties' marriage and the date they sold the home in December 1993, they spent an additional $3,117 in improvements to the home and the mortgage was reduced by an additional $17,075.
In December 1993, the parties sold the Torrington property for $87,000. At the time of the sale, the home equity line amounted to $14,672.00. The sale of the home yielded a net profit of $45,759.08. The couple purchased a home on E. Groveland Road in Beachwood for $137,000, using the $45,759.08 as a down payment. They obtained a mortgage for $95,000. At the time of trial, the mortgage had been reduced by $11,116.48.
Appellee filed for divorce on July 11, 1996. After a trial, the trial court granted the parties a divorce on May 26, 1998 and divided the marital property.
The trial court determined that the Torrington property belonged to appellee and used the formula set forth in Munroe v.Munroe (1997), 119 Ohio App.3d 530, 537 to determine appellee' s intent, which amounted to $28,347.92. Consequently, the trial court determined appellee's appreciation interest in the E. Groveland property to be 49.84%. The trial court also determined that appellee's pension had a present value of $20,390.06; of which $9,036.16 the trial court designated marital property. The court determined that appellee's Pipe Fitters Annuity Plan had a current value of $22,609.04; of which the trial court determined $4,770.97 as appellee's separate property because appellee earned it prior to the marriage. The court ruled that the remaining balance of $17,838.07 marital property.
The court designated the 1992 Ford Explorer as marital property with a fair market value of $10,000.
The court also concluded that "since the Defendant has failed to present evidence that would support a claim for spousal support the Court will not make such an award and will not retain jurisdiction over this issue." (Journal entry of 5/26/98 at 11.)
The trial court made the following finding with respect to the cost of health care for the children:
 It is further ordered, adjudged and decreed that Obligee pay the reasonable and ordinary uninsured and unreimbursed medical, dental, optical and prescription drug expenses for the minor children which are defined pursuant to R.C. 3113.215 (A) (12) as the first $100 per child per calendar year of the above expenses. Any remaining uninsured and/or unreimbursed medical, dental, optical and prescription drug expenses including co-payments and/or deductible shall be paid by both Obligor and Obligee in amounts equal to the percentages indicated on Line 16 of the Child Support Worksheet.
 It is further ordered, adjudged and decreed that the health insurer shall reimburse Marla Larkey for out-of-pocket medical, hospital, dental, optical or prescription expenses paid for the following children: Lindsay Larkey and Brandon Larkey.
The court also concluded that appellee initiated a series of financial transactions in May 1996 where he took cash advances from several of the parties' credit cards. On May 16, 1996, appellee took out a loan of $9,000 from the Greater Cleveland Fire Fighters Credit Union. Using the loan, he paid off two of the parties credit cards — a Toys R US Visa and a Fire Fighters Credit Union Visa. At the time of trial, all but $2,198.62 of the Credit Union loan had been repaid. The trial court concluded that the balance due on the loan was a separate debt of appellee's and that the funds generated by the loan are appellee's separate property. (Journal Entry of 5/26/98 at 8.) This appeal followed.
In her first assignment of error, appellant argues the trial court erred in failing to determine that appellee's separate interest in the Torrington Avenue property had not been transmuted by gift. The determination of whether property is marital or separate is a factual question. Barkley v. Barkley
(1997), 119 Ohio App.3d 155, 159. Accordingly, such a determination should be upheld unless it is found to be against the manifest weight of the evidence. Id. A decision should not be reversed as against the manifest weight of the evidence where it is supported by competent and credible evidence. Zeefe v. Zeefe
(1998), 125 Ohio App.3d 600, 614, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77.
R.C. 3105.171 (A) (6) (a) (ii) defines separate property as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." Demo v. Demo (1995), 101 Ohio App.3d 383, 387. However, separate property can become marital property by transmutation. Kuehn v. Kuehn (1988), 55 Ohio App.3d 245, 246, jurisdictional motions overruled (1989), 41 Ohio St.3d 709. Courts have outlined six factors to be considered when determining whether separate property has been transmuted. The factors are (1) the expressed intent of the parties insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties. Kuehn at 245. See also Barkley v.Barkley (1997), 119 Ohio App.3d 155, 161, fn. 1.
Appellant argues that appellee gifted her one-half interest in the Torrington property via a survivorship deed dated May 14, 1990 in which he conveyed title to the property from Gregg Larkey to Gregg Larkey and Marla Larkey. Citing Bertoldi v.Bertoldi (Oct. 8, 1997), Summit App. No. 18346, unreported, appellant argues appellee's act of granting her an interest in the property converted the Torrington house from separate property to marital property. However, the existence of the deed is not determinative of whether the property is marital property or separate property. Under R.C. 3105.171 (H), the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property, but is just one factor for the court's consideration. See Kahn v. Kahn
(1987), 42 Ohio App.3d 61, 65 ("A steadfast rule resulting in a gift to one spouse every time property is titled jointly encourages married couples to isolate separate property in contemplation of divorce.")
In this case, the parties gave different accounts of why appellant's name was added to the deed of the home. Appellee gave the following testimony:
Q: In 1990, what happened?
 A: Marla started suggesting that I put her name on it. She continued to nag about that for several weeks. I guess I finally gave in to get some peace in the house.
Q: Whose idea was it to put her name on the deed?
A: Marla's.
(Tr. 355.)
Appellant testified that adding her name to the deed was appellee's idea.
 Q: Could you relate to the Court the events that led up to the deed and the transfer of the property?
 A: After we found out I was pregnant, Gregg wanted to put the house in both our names. What he told me was it was his way of saying that I love you and thank you for getting pregnant with our first child.
Q: Did you nag or pester Mr. Larkey into signing the deed?
A: No.
Q: Whose idea was it to do the deed?
A: Gregg's.
Q: Did you have any input into his decision?
A: No.
(Tr. 723 — 724.)
The trial court had the responsibility of resolving the conflicts in the testimony. Without any indication that the trial court abused its discretion, we may not substitute our judgment for that of the trial court.
 Obviously, it is difficult to determine a spouse's intent at a prior time based upon an expression of that intent that is given after a relationship has broken down. Notwithstanding this difficulty, such a decision is better left to the trier of fact than a reviewing court.
Barkley at 162, fn. 3.
The evidence is undisputed that appellee purchased the property before the marriage. Appellant did not contribute any money toward the purchase. Appellee paid the mortgage using his own funds. Appellant never paid any money toward the mortgage on the home. All of the proceeds from the sale of the Torrington Avenue property were used as the down payment on the East Grovewood house. After considering the above factors, we conclude the trial court did not err in awarding appellee his separate interest in the Torrington house.
Appellant also argues the trial court erred in using the formula from Munroe v. Munroe to calculate the parties' interests in the Torrington Avenue property. She argues the trial court should not have used the Munroe formula without expert evidence as to the market value of the Torrington Avenue property at the time of the sale. We disagree.
"Fair market value" is defined as "that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market." Wray v. Stvartak (1997),121 Ohio App.3d 462, 471. In Munroe, the marital home had not been sold at the time of trial. Consequently, we based our calculations on how much the house would sell for at the relevant time, i.e. its fair market value. In the instant case, the trial court had objective evidence that the Torrington Avenue property sold for $87,000. Appellant provides us with no evidence that the sale price was not consistent with the sale prices of other similar homes in the area at the time and did not provide the trial court with any evidence of a different value for the Torrington Avenue property. Under the circumstances, we conclude the trial court did not abuse its discretion in determining the home's value or calculating the parties' interests therein.
Appellant's second assignment of error is overruled.
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN ITS VALUATION OF THE MARITAL PORTION OF THE APPELLEE'S PENSION PLAN.
In her second assignment of error, appellant argues the trial court erred in its valuation of the marital portion of appellee's pension plan. "Vested pension plans accumulated during a marriage are marital assets that a trial court must consider to arrive at an equitable property division." Leadingham v. Leadingham (1997),120 Ohio App.3d 496, 498, citing Bisker v. Bisker (1994),69 Ohio St.3d 608, 609.
When dividing pension or retirement benefits, the trial court must use its discretion and consider "the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result; the trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 179.
At trial, Appellee's expert, David Kelley testified as to the value of appellee's pension plan and annuity. Kelley testified that the pension had a present value of $16,304.81 as of April 7, 1997 and that 44.31% or $7,225.72 of that amount was earned during the marriage. In response to a question from the trial court, Kelley extrapolated the present value of the pension from March 1997 through March 1, 1998 and concluded that the present value of the pension as of March 1, 1998 was $20,390.66 and that $9,036.16 of that amount was earned during the marriage.
On cross examination, Kelley testified that his calculations were based on the premise that the plan started in 1980. Marla Larkey's attorney showed Kelley a document (marked as Defendant's Exhibit A) ostensibly obtained from Pipe Fitter's Local Union No. 120 which outlined appellee's accumulated pension benefits. After an objection from appellee's attorney that the document had not been properly authenticated, the trial court decided to allow questioning about the document on the condition that appellant's attorney brought someone from Pipe Fitters to authenticate it. Although appellant's attorney agreed to present such testimony, no such witness was ever called.
During cross examination, Kelley admitted that he was never made aware that most of appellee's pension benefits and credits were earned later into the plan than he originally believed. Based upon the information contained in the document, Kelley recalculated the value of the pension and determined that the marital portion of the pension had a value of $16,817.38.
We reject appellant's argument that the trial court should have valued the marital portion of the pension at $16,817.38. That figure was based solely on information in an exhibit that was never properly authenticated and was not admitted by the trial court.
Under R.C. 2317.40, business records are competent evidence "ifthe custodian or the person who made such record or under whosesupervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." (Emphasis added.) Evid.R. 803 (6) also requires that such documents be authenticated by the testimony of the custodian of such records or by another qualified witness." In this case, no representative of Pipe Fitters appeared at trial to authenticate the document and the trial court denied its admission. Because it was not properly authenticated, the trial court properly disregarded any testimony based on the Pipe Fitters document.
We also reject appellant's argument that Kelley relied on Exhibit A in giving his testimony as to the value of the pension. He gave the $20,390.66 figure before Exhibit A was presented to him. Furthermore, Kelley made no mention of Exhibit A when he was asked what information he obtained in order to conduct his pension evaluation. Although Kelley testified on cross examination that he was familiar with Exhibit A and had seen it before, he did not say that he relied upon it when preparing his report. The court did not err in accepting Kelley's testimony regarding the value of appellee's pension. Appellant's second assignment of error is overruled.
In her third assignment of error, appellant argues the trial court erred in determining that appellee's automobile constituted separate property. The party claiming that an asset is separate has the burden of proof by a preponderance of the evidence. Peckv. Peck (1994), 96 Ohio App.3d 731, 734. "`Preponderance of evidence' is defined as "evidence which is of greater weight or more convincing than evidence which is offered in opposition to it * * *.'" Diversified Benefit Plans Agency, Inc. v. Duryee
(1995), 101 Ohio App.3d 495, 501, citing Matchmaker Internatl.,Inc. v. Long [(1995), 100 Ohio App.3d 406.]
In its journal entry, the trial court wrote that appellee "is the owner of a 1994 Chevrolet with a fair market value of $9,000 which was purchased during the pendency of this action with funds from his separate property and as a result the asset is his separate property." (Journal entry of 5/26/98 at 8.) The evidence presented at trial indicated that appellee borrowed $13,200 from his father to purchase the car, then repaid the loan with a check for $16,000 withdrawn from his Fidelity account. Appellee testified that he did not use any marital funds to pay for the car.
Though appellant argues appellee failed to present any documentary evidence of the source of the funds used to buy the car, she presented no testimony to contradict appellee's account of how the car was obtained. We conclude that the preponderance of the evidence supported the finding that the Grand Prix was appellee's separate property. Appellant's third assignment of error is overruled.
In her fourth assignment of error, appellant argues the trial court erred by failing to credit her for half of the marital funds spent by appellee to reduce his separate debt to the Fire Fighters Credit Union. When reviewing the division of marital property and the allocation of marital debts, we are guided by an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348,355. See, also, Berish v. Berish (1982), 69 Ohio St.2d 318,319; Mulvey v. Mulvey (Dec. 4, 1996), Summit App. No. 17707, unreported. Any claimed disparity in the allocation of the parties' debt must be viewed in light of the entire property division. Snyder v. Snyder (1995), 105 Ohio App.3d 69, 78.
The trial court concluded that the $9,000 loan from the Fire Fighters Credit Union was a separate debt of appellee's and that the funds generated by the loan were appellee's separate property. (Journal entry of 5/26/98 at 8.) The loan was taken out in appellee's name only on May 16, 1996. Appellee testified that he repaid over $6,000 of the loan amount. Appellant presented no evidence that any of her funds were used to repay the loan. Appellee testified that most of the money went to pay his attorney. Appellee's attorney, Vincent Stafford, presented evidence that he was retained in June 1996 and that he had been paid more than $13,000 in attorney fees between July 1, 1996 and March 20, 1998. We find no basis upon which to conclude that the trial court abused its discretion by failing to credit appellant for half of the marital funds spent by appellee to reduce the balance of the Fire Fighters Credit Union loan. Appellant's fourth assignment of error is overruled.
In her fifth assignment of error, appellant argues the trial court erred in failing to retain jurisdiction over the issue of spousal support.
On the issue of spousal support, the trial court concluded:
 Since the Defendant has failed to present evidence that would support a claim for spousal support the Court will not make such an award and will not retain jurisdiction over this issue.
(Journal Entry of 5/26/98 at 11.)
R.C. 3105.18 (E) provides that a court which, issues a spousal support order does not have jurisdiction to modify the amount or terms of the spousal support unless the divorce decree contains a provision specifically authorizing the court to modify the support unless the party's circumstances have changed and the decree authorizes the court to modify the support order. However, a trial court is not required to retain jurisdiction over the issue of spousal support. See McLaughlin v. Cotner (June 17, 1999), Cuyahoga App. No. 74016, unreported, citing Fausey v. Fausey (Oct. 13, 1995), Montgomery App. No. 14673, unreported. It has been held that a trial court has no authority to retain jurisdiction over the issue of spousal support where the court makes a specific finding that spousal support is not warranted.Wolding v. Wolding (1992), 82 Ohio App.3d 235, 239.[2]
In this case, the trial court made a finding that spousal support was not warranted. Under Wolding, the court's failure to retain jurisdiction was proper. Appellant's fifth assignment of error is without merit.
In her sixth assignment of error, appellant argues the trial court erred by allocating the children's health care costs in a manner inconsistent with the provisions of the shared parenting plan signed by the parties.
R.C. 3109.04 (E) (2) (b) provides:
 The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.
The parties signed a Shared Parenting Plan on March 19, 1998. In its final journal entry, the trial court acknowledged that the parties had negotiated a shared parenting plan and stated that the plan was "in the best interest of the minor children." The shared parenting plan contained the following language with respect to the costs of medical and dental care of the parties' minor children:
 All uninsured, uncovered or unreimbursed medical, dental, optical or psychiatric expenses shall be paid sixty-five percent (65%) Father and thirty-five percent (35%) Mother.
[Shared Parenting Plan Section VII (Medical and Dental Care) at 10.]
However, in its final journal entry, the trial court issued the following order:
 It is further ordered, adjudged and decreed that Obligee pay the reasonable and ordinary uninsured and unreimbursed medical, dental, optical and prescription drug expenses for the minor children which are defined pursuant to R.C. 3113.215 (A) (12) as the first $100 per child per calendar year of the above expenses. Any remaining uninsured and/or unreimbursed medical, dental, optical and prescription drug expenses including co-payments and/or deductibles shall be paid by both Obligor and Obligee in amounts equal to the percentages indicated on Line 16 of the Child Support Worksheet.
(Journal Entry of 5/26/98 at 14.)
The trial court's final journal entry clearly altered the terms of the shared parenting agreement. R.C. 3109.04 (E) (2) (b) clearly requires that a modification of a shared parenting plan must be in the best interest of the child. See Schoettle v.Bering (April 22, 1996), Brown App. No. CA95-07-011, unreported. The trial court made no finding that altering the agreement with respect to the children's uninsured and unreimbursed medical, dental, optical and prescription drug expenses was in the best interest of the children as required by the statute. Appellant's sixth assignment of error is well taken. Accordingly, we reverse that portion of the trial court's journal entry that orders appellant to pay 100% percent of such expenses and hereby modify it to order that appellee shall pay 65% of such expenses and appellant shall pay 35% of such expenses as agreed in the shared parenting agreement signed by the parties.
The judgment of the trial court is affirmed as modified.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Domestic Relations Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PORTER, A.J., and O'DONNELL, J., CONCUR.
 ___________________________________ PATRICIA ANN BLACKMON JUDGE
[1] See Appendix.
[2] A different result was reached in Harbert v. Harbert (Oct. 17, 1997), Greene App. No. 96-CA-0161, unreported. In Harbert,
the appellate court affirmed a decision in which the trial court made no order of spousal support, but retained jurisdiction over the issue of spousal support for a period of ten years. The appellant in Harbert certified a conflict with Wolding to the Supreme court, but the Supreme court later dismissed the appeal in Harbert v. Harbert (1996), 75 Ohio St.3d 1470.
 APPENDIX
ASSIGNMENTS OF ERROR
 1. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ITS DETERMINATION THAT THE APPELLEE'S SEPARATE INTEREST IN THE MARITAL RESIDENCE HAD NOT BEEN TRANSMUTED BY GIFT.
 2. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN ITS VALUATION OF THE MARITAL PORTION OF THE APPELLEE'S PENSION PLAN.
 3. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ITS DETERMINATION THAT THE APPELLEE'S AUTOMOBILE CONSTITUTED SEPARATE PROPERTY.
 4. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR FAILING TO CREDIT THE APPELLANT FOR HALF THE MARITAL PROCEEDS EXPENDED BY THE APPELLEE TO REDUCE HIS SEPARATE DEBT.
 5. THE TRIAL COURT COMMITTED ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN ITS FAILURE TO RETAIN JURISDICTION TO AWARD SPOUSAL SUPPORT. [sic]
 6. THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF THE APPELLANT BY IMPOSING A PROVISION FOR THE ALLOCATION OF HEALTH COSTS INCONSISTENT WITH THE PARTIES' JOINT SHARED PARENTING PLAN IN CONTRAVENTION OF R.C. 3109.04 (D) (1) (a) (i).