WALLER, Appellee,

v.

WALLER, Appellant.

[Cite as *Waller v. Waller,* 163 Ohio App.3d 303, 2005-Ohio-4891.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 04 JE 27.

Decided Sept. 14, 2005.

Jane M. Keenan, for appellee.

John J. Mascio, for appellant.

WAITE, Judge.

{¶ 1} Appellant, Harvey Waller, is appealing a number of the financial aspects of his divorce decree issued by the Jefferson County Court of Common Pleas. In his five assignments of error, he argues that the division of marital assets was unjustly skewed in favor of appellee, Karen Waller; that the amount, duration, and required increases in spousal support were in error; and that he should not have been required to purchase a life insurance policy with appellee as beneficiary. Two of appellant's assignments of error have merit. The trial court made an apparent clerical error in ordering a $300 increase in spousal support beginning in January 2005. The court also erred in ordering appellant to maintain a life-insurance policy to secure the spousal-support award, without following the requirements of R.C. 3105.18(B). For these reasons, the trial court judgment is partially reversed and the cause is remanded for clarification and correction from the trial court.

{¶ 2} Appellant was married to appellee for 29 years, beginning in 1975. During the marriage, appellant earned his living as a self-employed chiropractor. The parties had no children together, although appellant had been married twice previously and had four children from those marriages. It is undisputed that during the marriage, appellee worked as office manager and secretary at appellant's chiropractic office and that she took an artificially low salary (with appellant taking a higher salary) in order to maximize appellant's contributions to his Social Security account.

{¶ 3} Appellee filed a divorce complaint in the Jefferson County Court of Common Pleas on June 5, 2003. A final divorce hearing was held on December 11, 2003. At the time of the divorce, appellant was almost 64 years old and appellee was 51. The final decree of divorce was issued on August 9, 2004, and this timely appeal followed. Appellant also filed a motion for stay of execution of the divorce decree, which was denied by this court on November 11, 2004.

### Assignment of Error No. 1

{¶ 4} "The trial court erred with respect to its division of assets between the parties."

{¶ 5} The parties correctly cite the standard of review of decisions involving the division of marital property, which is that the trial court's decision will not be reversed absent an abuse of discretion. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 421 N.E.2d 1293. An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 6} Marital property in a divorce case should be divided equally, unless the trial court determines that an equal division would be inequitable. See R.C. 3105.171(C)(1). If the division of marital assets is not equal, the trial court should explain in sufficient detail why an unequal division is equitable. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.

{¶ 7} Furthermore, a reviewing court is required to examine the overall equity of the division of marital assets and not to conduct a line-by-line analysis of every item of marital property: "[I]t is not this court's role to conduct an item by item review of the marital assets and liabilities. Our review is limited to the equity, i.e., fairness * * *." *Fergus v. Fergus* (1997), 117 Ohio App.3d 432, 438, 690 N.E.2d 949.

{¶ 8} The trial court is required to consider the factors listed in R.C. 3105.171(F) when dividing the marital assets:

{¶ 9} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:

{¶ 10} "(1) The duration of the marriage;

{¶ 11} "(2) The assets and liabilities of the spouses;

{¶ 12} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

{¶ 13} "(4) The liquidity of the property to be distributed;

{¶ 14} "(5) The economic desirability of retaining intact an asset or an interest in an asset;

{¶ 15} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

{¶ 16} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

{¶ 17} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

{¶ 18} "(9) Any other factor that the court expressly finds to be relevant and equitable."

{¶ 19} Appellant contends that the division of assets was unequal and inequitable, although it is unclear why appellant has this belief. Appellant apparently concedes that the trial court awarded him substantially more assets than it awarded appellee. The major part of appellant's assignment of error discusses

the impact of Social Security benefits on the division of marital assets. Appellant understands that the evidence at trial set forth two different estimates for appellee's future Social Security benefits and that the trial court calculated two different final values for the division of marital assets using both of these figures. It is clear from the record that regardless which formula the trial court used, appellant received more marital assets than appellee. According to the trial court's calculations, appellant received either $1,685.68 or $23,292.15 more, plus an additional $10,000 that appellee was required to transfer to appellant, for a total of either $11,685.68 or $33,292.15 in appellant's favor. Appellant's argument must be, therefore, that even with this large disparity in his favor, the division of marital assets was inequitable.

A. Impact of Social Security Benefits on the Division of Marital Assets

{¶ 20} In his brief, appellant discusses *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, in which the Supreme Court held that future Social Security benefits could be taken into account as a factor in dividing marital assets, even though the benefits themselves could not actually be divided, transferred, assigned, or become subject to execution, levy, attachment, garnishment, or other legal process. Id. at ¶ 7, 12. The trial court referred to *Neville* in its judgment entry and relied upon it in making its decision.

{¶ 21} Appellant apparently believes that the trial court's application of *Neville* created an inequity in the division of marital assets. Appellant attempts to distinguish the facts of *Neville* from the instant case. In *Neville* the wife had been a full-time mother and homemaker with presumably few possibilities for employment after the divorce, whereas appellee in this case had earned regular income (albeit a very low wage) during the marriage and has prospects of continued employment after the divorce. Appellant apparently believes that the trial court undervalued appellee's potential future Social Security benefits, and that this undervaluation should result in a reversal of the trial court's division of marital property.

{¶ 22} Coincidentally, the same expert witness used in *Neville* was the expert that the parties used in the instant case to calculate future Social Security benefits. The expert is David I. Kelley. The parties in the instant appeal shared the cost in hiring Kelley and stipulated to his qualifications as an expert in Social Security matters. During Kelley's testimony, he remarked that in *Neville,* he did not take into account the wife's Social Security benefits at all, because she had no income during the marriage, and thus, had no Social Security benefits attributable to the marriage. In this case, though, appellee had income and Social Security benefits attributable to the marriage and will likely continue to earn income in the future. This future income will be taxed for Social Security

purposes and will result in a change in her potential Social Security benefits. Based on these facts, Kelley considered appellee's future Social Security benefits in his analysis.

{¶ 23} *Neville* also failed to take into account a factor called the "widow's benefit," which refers to the fact that women typically live longer than men and continue receiving Social Security benefits after their husbands have died. Kelley took the "widow's benefit" into account, along with many other factors, in determining the current value of the marital portion of appellee's future Social Security benefits. Kelley did two separate calculations: one assumed that appellee would continue working, and the other assumed that her Social Security benefits would be frozen as of the date of the divorce. These two calculations for the marital portion of appellee's future Social Security benefits were $151,294.53 (assuming appellee's wages steadily increased from year to year by 3.6 percent) and $172,900.96 (assuming appellee's benefits would freeze at the current level and she would have no further taxable wages).

{¶ 24} It may not be immediately obvious why appellee's potential Social Security benefits would be lower for the scenario that projected that she would have steadily increasing income. Keep in mind that the calculations of $151,000 and $172,000 refer only to the marital portion of appellee's future Social Security benefits. Kelley's calculations did project that appellee's overall Social Security benefits would be higher if she continued receiving wages after the divorce. He calculated that she would receive $613 per month in Social Security if she earned no more wages after the divorce and $699 if she continued to work until age 62. He explained, though, that an additional 11 years of wages (based on appellee's current age of 51 and an early retirement age of 62) would change the ratio of benefits attributable to marriage with respect to the total benefits accrued during her entire working life. Using a simple example, if appellee had worked for ten years prior to the marriage and ten years during the marriage, at the time of divorce, the marital portion would be 50 percent of the total (ten years out of 20). If she worked another ten years after the divorce, the marital portion would be only 33 percent (ten years out of a total of 30).

{¶ 25} Appellant contends that appellee will continue earning income, significant income, until her own retirement. Using appellant's logic, the trial court should have relied on Kelley's lower calculation for the marital value of appellee's Social Security benefits, because that is the calculation that took into account that appellee would keep working after the marriage. According to the analysis of Mr. Kelley, every dollar that appellee pays in tax toward Social Security after the divorce will actually work to reduce the amount of future Social Security benefits attributable to the marriage. If we assume that the lower value, approximately $151,000 rather than approximately $172,000, is the correct value (in keeping with

the logic of appellant's argument), then the final division of marital assets actually awarded appellant over $33,000 more in marital assets than appellee received. We cannot see how appellant may have been prejudiced by the trial court's actions, because both calculations used by the trial court resulted in a property division in appellant's favor.

■ {¶ 26} Our discussion of this issue is not meant to imply that a trial court may assess, value, divide and distribute Social Security benefits in the same manner that other marital assets are treated. Although Social Security benefits share some of the attributes of pension and retirement benefits, federal law prohibits Social Security benefits from being divided or transferred during divorce proceedings, and thus, they do not actually become part of the marital estate. *Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶ 7–8. As explained in *Neville*, though, the parties' Social Security benefits may be a very important factor for the trial court to consider when it determines an equitable division of the assets that actually do make up the marital estate. Our analysis of this assignment of error is only meant to highlight the reasonable nature of the trial court's consideration of the parties' Social Security benefits in this case.

### B. Impact of Taxes on Division of Marital Assets

■ {¶ 27} Appellant also contends that the trial court was required to consider the tax consequences of liquidating the parties' 401K accounts and insurance policies. According to R.C. 3105.171(F)(6), the trial court must consider tax consequences in its division of marital assets. Appellant assumes that the 401K accounts and insurance policies will be liquidated and incur tax liability, but nothing in the court's decree requires that conclusion. The trial court determined that no assets would need to be liquidated and that there would be no immediate tax consequences.

{¶ 28} This same situation occurred in *Guidubaldi v. Guidubaldi*, in which the Eleventh District Court of Appeals stated:

{¶ 29} "The proposed tax consequences assume early withdrawal of the account. Nothing in the record suggests appellant will need to withdraw these monies prematurely. These tax consequences are only speculative. As such, the court need not participate in conjecture and speculation to determine the possible tax consequences of a potential action. See *Day v. Day* (1988), 40 Ohio App.3d 155, 532 N.E.2d 201." *Guidubaldi v. Guidubaldi* (1990), 64 Ohio App.3d 361, 367–368, 581 N.E.2d 621.

{¶ 30} The trial court did consider whether or not to use the face value of the parties' 401K accounts and insurance policies and determined that the face value was appropriate because "neither party is required to immediately cash in any of

said policies or accounts." Thus, for appellant to contend that the court did not consider whether or not there would be tax consequences is erroneous. The trial court considered the issue and determined that there would be no tax consequences.

{¶ 31} Appellee also notes that appellant stipulated to the current cash value of the 401(K) accounts, the life-insurance policies, and a variety of other assets. If appellant planned to question the value of these assets at trial, it is unclear why he stipulated to their values on December 11, 2003.

{¶ 32} Even if the trial court were to recalculate the tax consequences of its division of marital assets, it would most likely need to make adjustments that favor appellee rather than appellant. Appellee was ordered to make a $10,000 cash transfer to appellant to make up for the fact that she had received $20,000 in household goods as part of the division of assets. It is appellee who most likely would have needed to liquidate assets and who was most likely to incur immediate tax liability for liquidating those assets. Thus, any error the trial court may have made in using the face value, rather than the after-tax value, of the various investment accounts and insurance policies actually benefited appellant and was not prejudicial error.

{¶ 33} In this appeal, appellant attempts to recalculate the tax effect of cashing in the various accounts using different tax values than were presented at trial. Appellant's financial expert used a proposed 31 percent tax rate at trial, and not the 10 to 15 percent rate that appellant is now proposing. Appellant is essentially asking this court to consider new evidence that was not presented to the trial court. This court is limited to reviewing the evidence that was presented to the trial court: "A reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings and then decide the appeal on the basis of the new evidence." *Papadelis v. First Am. Sav. Bank* (1996), 112 Ohio App.3d 576, 581, 679 N.E.2d 356.

## C. Division of $5,000 Savings Account

{¶ 34} Appellant also contends that the trial court failed to take into account that $5,000 was withdrawn from one of the insurance policies and that his overall assets were undervalued by $5,000. The record, though, does not reflect any error in the trial court's calculation. Appellant's financial expert valued insurance policy No. 2214604 at $7,418 after deducting appellant's $5,000 withdrawal, and this is the same dollar amount used by the trial court as the valuation of the policy. Appellant put the $5,000 into a savings account, and the court awarded half of that account to each party.

{¶ 35} Given that the division of marital assets was unequal but greatly in appellant's favor and appellant cannot show that he was prejudiced by the division, there is no merit to appellant's argument that the trial court abused its discretion in dividing the marital assets. Appellant's first assignment of error is overruled.

### Assignments of Error Nos. 2, 3, 5

{¶ 36} The next three assignments of error all deal with spousal support and will be treated together to simplify the analysis.

### Assignment of Error No. 2

{¶ 37} "The trial court erred with respect to the amount of spousal support awarded plaintiff/appellee effective August 1, 2004."

### Assignment of Error No. 3

{¶ 38} "The trial court erred with respect to the increase in the amount of spousal support to be paid plaintiff/appellee effective January 1, 2005."

### Assignment of Error No. 5

{¶ 39} "The trial court erred in requiring appellant to pay spousal support for a one hundred and twenty (120) month period of time."

### A.  Standard of Review

{¶ 40} Appellant concedes that an award of spousal support is within the sound discretion of the trial court. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. This discretion is not unlimited and is governed in large part by the spousal-support statute, R.C. 3105.18, which states:

{¶ 41} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.

{¶ 42} "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.

{¶ 43} "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.

{¶ 44} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

{¶ 45} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

{¶ 46} "(b) The relative earning abilities of the parties;

{¶ 47} "(c) The ages and the physical, mental, and emotional conditions of the parties;

{¶ 48} "(d) The retirement benefits of the parties;

{¶ 49} "(e) The duration of the marriage;

{¶ 50} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶ 51} "(g) The standard of living of the parties established during the marriage;

{¶ 52} "(h) The relative extent of education of the parties;

{¶ 53} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶ 54} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶ 55} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

{¶ 56} "(l) The tax consequences, for each party, of an award of spousal support;

{¶ 57} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

{¶ 58} "(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 59} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party

shall be considered to have contributed equally to the production of marital income."

{¶ 60} Within the limits provided by the statute, the trial court is granted broad discretion to determine what is equitable under the facts and circumstances of each case. *Kunkle,* supra, at 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore,* supra, at 219, 5 OBR 481, 450 N.E.2d 1140.

### B. Was the Amount of Spousal Support Excessive?

{¶ 61} Appellant's first concern is that the amount of spousal support was excessive. Appellant was ordered to pay $1,200 per month for five months, and then $1,500 per month after that, for ten years. The court found that appellee had monthly expenses of $2,844 and income of $1,109 per month. The court also found that appellant had expenses of $2,577 and income of $3,800 per month, with an additional Social Security benefit of $1,700 per month beginning in 2005. Given these findings, the court's award of spousal support was within appellant's ability to pay and was less than the amount needed for appellee to meet her projected monthly expenses. This does not appear to be an excessive amount of spousal support.

{¶ 62} At one point appellee testified that she was "entitled" to have certain items be included as part of spousal support, including $50 for entertainment, $50 for hobbies, $50 for donations, $62.50 for gifts, and other items listed under the "enrichment" heading of her financial affidavit. According to appellant, these so-called "entitlements" totaled $479.17, and he argues that the trial court should not have included this amount in its calculation of appellee's monthly expenses. Appellant cites, inter alia, the holding of the Twelfth District Court of Appeals in *Carnahan v. Carnahan* (1997), 118 Ohio App.3d 393, 692 N.E.2d 1086, for the principle that spousal support must be based on need and not "entitlement."

{¶ 63} Appellant is apparently relying on an earlier version of the spousal-support statute, because under the current statute, spousal support is not based solely on need, but rather, on what the court considers reasonable. *Berthelot v. Berthelot,* 154 Ohio App.3d 101, 2003-Ohio-4519, 796 N.E.2d 541, ¶ 47. It is true that earlier statutes mandated that alimony was to be based solely on need, and that some older cases interpreting the alimony statute are sometimes cited as authority in interpreting the newer spousal-support statute, which does not require that support be based solely on need. This court has recently agreed with the holding of the Tenth District Court of Appeals that " '[w]hen considering

an award of spousal support, a court should consider all fourteen factors listed in R.C. § 3105.18(C), and award only an amount which is appropriate and reasonable, not an amount based upon need.'" *Kennedy v. Kennedy,* 7th Dist. No. 03 CO 37, 2004-Ohio-6798, 2004 WL 2913951, ¶ 14, quoting *Schultz v. Schultz* (1996), 110 Ohio App.3d 715, 724, 675 N.E.2d 55. It should be noted that *Carnahan,* which was cited by appellant, rejected the analysis and holding of *Schultz,* while this court has specifically adopted the reasoning and holding of *Schultz.* We reiterate our previous holding that need is but one factor among many that the trial court may consider in awarding reasonable spousal support. *Kennedy* at ¶ 14.

{¶ 64} Even if spousal support were based solely on need, the divorce-hearing transcript reflects that the trial court asked appellee whether she "needed" the aforementioned items, and appellee responded "yes," so there does not appear to be any error as to evidence of need.

{¶ 65} Appellant also objects to the method by which certain expenses were presented to the trial court. Appellee's attorney read into the record expenses from the financial affidavit that appellee had filed earlier. Appellant contends that this was not admissible evidence. We agree with appellant that an attorney's comments, in and of themselves, are not treated as evidence. *Calex Corp. v. United Steelworkers of Am.* (2000), 137 Ohio App.3d 74, 86, 738 N.E.2d 51. In the instant case, though, the record contains more than counsel's commentary in support of appellee's list of expenses. The record also contains the parties' actual financial affidavits. Appellee herself also testified that the items on the affidavit, which were read by counsel, were correct. It is not an abuse of discretion for the court to consider a party's properly filed financial affidavit when making its determination of spousal support when it is supported by a witness's testimony presented during the divorce hearing. *Tinney v. Tinney,* 2nd Dist. No. 19906, 2004-Ohio-1160, 2004 WL 445947.

{¶ 66} Appellant also objects to some specific dollar amounts that may have gone into the trial court's calculations:

{¶ 67} First, appellant contends that appellee's monthly mortgage payment may have been inflated by $9.12 for the months of August, September, October, November, and December 2004. There is no indication in the record that the trial court used the exact amount of appellee's mortgage payment to establish the exact amount of spousal support, so it is impossible to say that the $9.12 discrepancy, if it occurred, was prejudicial error.

{¶ 68} Second, the trial judge may have overestimated appellee's monthly electric bill by $8 per month. There is no indication, though, that the trial court's decision specifically incorporated an exact amount of spousal support to be

applied to electrical costs. The electric bill was only one of many factors the court estimated and considered in arriving at the final value of spousal support.

{¶ 69} Third, appellee's lawn care was estimated at $50 per month, but appellant believes this amount is not supported by the record. There was some testimony that appellee's monthly lawn care expense had been $32.50. The trial court appears to have simply picked what seemed to be a fair amount for lawn care.

{¶ 70} Fourth, appellant contends that there was no testimony supporting a $100 monthly estimate for appellee's home cleaning and maintenance.

{¶ 71} The record, though, reveals that the $100 amount was specifically mentioned at trial.

{¶ 72} Fifth, appellee estimated $75 per month for health-insurance premiums through her employer, All About Women. Appellant contends that appellee no longer works there. The record, though, does not reveal that appellee's employment situation has changed. Appellant's allegation was not discussed at trial and forms no part of the record on appeal.

{¶ 73} A reviewing court is called upon to look at the totality of the circumstances surrounding the award of spousal support. *Kunkle,* supra, at 67, 554 N.E.2d 83. Reversible error may be found only in looking at the reasonableness of the award in its entirety, rather than in examining one factor in isolation to the larger context of the award. *Snyder v. Snyder* (1995), 105 Ohio App.3d 69, 78, 663 N.E.2d 695; but compare with cases dealing with the division of marital assets, such as *Fergus,* supra, 117 Ohio App.3d 432, 438, 690 N.E.2d 949 ("Furthermore, it is not this court's role to conduct an item by item review of the marital assets and liabilities. Our review is limited to the equity, i.e., fairness * * * ").

{¶ 74} It is clear from the record that the trial court did not rely solely on the projected expenses of the parties when it formulated its spousal-support award. The court's judgment entry states that the court considered each party's income, earning ability, age, physical health, retirement benefits, education, and current employment status, and the length of the marriage, the prior standard of living, and assets and liabilities, and the fact that appellee drew a lower salary for many years so that appellant could take a larger salary and maximize his Social Security benefits. The record reflects that the trial court specifically considered every applicable factor listed in R.C. 3105.18(C)(1).

{¶ 75} Appellant contends that the trial court did not consider his ability to pay spousal support. Since it is clear that the trial court considered appellant's assets and projected income and expenses, it is unclear what else appellant

would have had the trial court consider in determining his ability to pay spousal support.

C. Was There a Basis for Increasing Spousal Support in January 2005?

{¶ 76} In appellant's third assignment of error, he argues that the trial court erred by requiring spousal support to be increased by $300 starting in January 2005. The court made a specific finding that appellant was eligible to begin receiving Social Security benefits in January 2005, totaling an additional $1,700 per month. There is no other indication in the record as to why spousal support should increase in January other than the added Social Security benefits. The trial court, though, appears to have simply misstated the date that the Social Security benefits would begin. Neither appellant nor appellee presented any evidence contradicting the testimony that these benefits would begin in April or May of 2005. There is nothing we have found in the record to indicate that appellant's Social Security benefits would begin in January. Based on the trial court's own findings and analysis, the additional $300 per month was beyond appellant's ability to pay without the additional income from Social Security, and yet, appellant would not have had this extra income in January, February, or March of 2005. This aspect of appellant's third assignment of error is persuasive.

{¶ 77} Appellant further argues that his extra Social Security benefits should not have triggered any increase in spousal support at all because spousal support is not based solely on one party having the resources to pay support. There is another factor, though, that supports the increase in spousal support above and beyond appellant's added Social Security income. The original spousal-support award of $1200 did not meet appellee's projected expenses as determined by the trial court. The court found that her expenses exceeded her income by $1,735 (subtracting $2,844 in expenses from $1,109 income). The support award still left appellee with a shortfall of $535. The additional $300, after appellant began receiving Social Security, brought appellee closer to meeting her projected expenses. Although there are other reasons to justify why spousal support increased due to appellant's added Social Security benefits, the shortfall in appellee's ability to meet her projected expenses is the most obvious.

{¶ 78} Based on the foregoing analysis, appellant's third assignment of error is partially sustained. The trial court incorrectly used the date of January 1, 2005, as the date that spousal support would increase to $1,500 per month. Upon remand, the trial court is directed to correct this apparently clerical error.

D. Was It Equitable to Order Spousal Support for Ten Years?

{¶ 79} Turning to appellant's fifth assignment of error, he disagrees with the court's decision to order spousal support for 120 months, except upon the

death of either party, or until appellee marries or cohabitates with a nonrelative male. Appellant claims that he will be 74 years old before the spousal-support order terminates. Appellant acknowledges that the trial court has discretion in these matters and has a variety of factors to consider in awarding spousal support, including the relative lifestyles of the parties prior to the divorce. See R.C. 3105.18(C)(1)(g). Appellant argues, though, that he will be put into a position of virtual involuntary servitude, with no guarantee that any request for modification would be granted if he does attempt to retire.

{¶ 80} The divorce-decree states that the trial court has reserved jurisdiction to modify spousal support. Voluntary retirement has been treated as a change of circumstances warranting a renewed examination of the fairness of the spousal-support award. *Reed v. Reed* (Feb. 16, 2001), 2nd Dist. No. 2000CA81, 2001 WL 127873. Appellant would need to request the trial court to modify the spousal-support award at the time that his circumstances change. Obviously, there are no guarantees that the trial court would reduce appellant's spousal-support payment upon retirement. If appellant should believe that the trial court abused its discretion following such a request, an appeal can be filed. Appellant seeks to have this court anticipate that the trial court will abuse its discretion if and when he asks to modify spousal support, and to preemptively correct the problem. Appellant's request is outside the scope of remedies available in this direct appeal, and he must wait until this request is ripe.

{¶ 81} Appellee argues that the trial court could have awarded even more than ten years of spousal support based on the length of the marriage (29 years), appellee's age (52 years old at the time of divorce), the limited ability of appellee to prepare for and obtain meaningful employment after the divorce, the sacrifices appellee made for appellant's chiropractic business, and appellant's significantly larger retirement accounts and benefits. These facts all appear in the record and do support the amount and duration of the spousal-support award.

{¶ 82} At trial, appellant himself testified that he thought it would be fair for appellee to receive spousal support for seven years, but he stated that the only reason he picked that length of time was because he had heard that there should be one year of spousal support for every four years of marriage. Appellant provided no other reasons or specific evidence at trial to support his recommendation of seven years of spousal support.

{¶ 83} Based on the evidence at trial, the trial court reasonably awarded spousal support for ten years, especially in light of the length of the marriage, the contributions that appellee made to appellant's Social Security account, the ages of the parties, and the sacrifices appellee made for appellant's business. The trial court took these and other factors into account, and appellant himself is unable to

formulate a clear rationale for why spousal support should last less than ten years.

## Assignment of Error No. 4

{¶ 84} "The trial court erred with respect to requiring defendant/appellant to purchase a life insurance policy with plaintiff/appellee as beneficiary so as to secure the payment of spousal support."

{¶ 85} The trial court ordered appellant to "maintain a life insurance policy with Plaintiff–Wife, Wife as beneficiary during the term of the spousal support obligation in the initial amount of $75,000.00 which value might decrease to $0 at the end of the obligation." There was evidence at trial that appellant already maintained a term life-insurance policy with a face value of $100,000 that could be used to satisfy the court's requirement. This policy had no current cash surrender value and had originally been taken out to pay off the parties' mortgage in case of appellant's death.

{¶ 86} In order to address appellant's assigned error, we need to apply the following portion of R.C. 3105.18(B): "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise." Although appellant's argument is somewhat vague, he appears to be taking issue with the fact that the trial court did not expressly state that spousal support would continue after his death, as required by R.C. 3105.18(B). In fact, the divorce decree states the opposite. Appellant argues that a life-insurance policy that guarantees the full value of the ten-year spousal-support award is equivalent to a spousal-support obligation that must be paid regardless of his death. Although appellant does not cite R.C. 3105.18(B), his argument necessarily implies that the trial court in this case violated the requirements of the statute.

{¶ 87} Five courts have interpreted the aforementioned statutory provision to mean that the trial court must comply with R.C. 3105.18(B) and expressly state that spousal-support will continue after the death of the obligor in order to justify securing the spousal-support award with a life-insurance policy. See *McCoy v. McCoy* (1993), 91 Ohio App.3d 570, 632 N.E.2d 1358 (Eighth District); *Addy v. Addy* (1994), 97 Ohio App.3d 204, 646 N.E.2d 513 (Tenth District); *Pope v. Pope* (April 11, 1997), 6th Dist. No. L–96–198, 1997 WL 177697; *Moore v. Moore* (1997), 120 Ohio App.3d 488, 698 N.E.2d 459 (Ninth District); *Vlah v. Vlah* (Nov. 28, 1997), 11th Dist. No. 97–G–2049, 1997 WL 750812.

{¶ 88} Some older appellate opinions do not require the trial court to use any specific language when it orders one party to maintain life insurance to secure alimony or spousal support, but these cases do not sufficiently explain their reasoning or are based on statutory provisions that no longer exist. See, e.g.,

*Jump v. Jump* (Oct. 13, 1993), 2nd Dist. No. CA 13714, CA 13965, 1993 WL 408017; *Gore v. Gore* (1985), 27 Ohio App.3d 141, 27 OBR 173, 499 N.E.2d 1281 (Ninth District).

{¶ 89} The current consensus of the appellate courts appear to be that a trial court can secure a spousal-support order with life insurance, but only if the court makes it clear that it is, in effect, ordering spousal support to extend beyond the death of the obligor.

{¶ 90} The problem in the instant case is that the trial court's order seems contradictory, and thus, its intent is not clear. On the one hand, the order states that spousal support shall terminate upon the death of either party. On the other hand, appellant is required to maintain life-insurance that would give appellee the *equivalent* of spousal-support payments beyond appellant's death, if he dies before the end of the ten-year duration of the spousal-support award. The requirement that appellant maintain life insurance to cover the spousal-support award is clearly an attempt to guarantee at least some portion of the spousal-support award even if appellant dies before the end of the ten-year award period. By stating both that spousal support should terminate upon the death of the parties and that it should continue after appellant's death in the form of life-insurance benefits, the trial court opinion reveals an inconsistency in the court's intention. When the trial court's intent in awarding spousal support cannot be gleaned from the record, our usual course of action is to remand the cause to the trial court so that it may express its intent more clearly. See, e.g., *Goswami v. Goswami*, 152 Ohio App.3d 151, 2003-Ohio-803, 787 N.E.2d 26, ¶ 129; *Fernback v. Fernback* (Dec. 14, 2001), 7th Dist. No. 00–C.A.–276, 2001 WL 1647229.

{¶ 91} Appellee argues that the trial court actually intended for the life-insurance policy to secure the division of marital-property award. If the trial court did have this intent, there is no indication of it in the court's journal entries. Furthermore, appellee's argument does not comport with the actual facts of this case. Appellant did not owe anything to appellee in relation to the division of marital property. Thus, there was nothing that needed to be secured by life insurance. It was appellee who owed appellant $10,000 in order to balance the division of marital property. When a court orders that a party obtain life insurance to guarantee the division of marital property, it is typically because that party is required to make some kind of ongoing payments to fully execute the court's order. The insurance policy provides a means to satisfy those payments in case the obligor otherwise defaults in its obligation. For example, in *Ballas v. Ballas*, 7th Dist. No. 04 MA 60, 2004-Ohio-5128, 2004 WL 2334329, the trial court ordered the husband to make monthly payments over five years in order to equalize the division of marital property and also ordered the husband to

secure the obligation with a life-insurance policy. *Ballas* does not apply to the instant case. Appellee is the obligor in this case.

{¶ 92} For the foregoing reasons, appellant's fourth assignment of error is sustained. Upon remand, the trial court must expressly state that appellee will receive $75,000 in spousal support whether or not appellant dies, to be guaranteed by a life-insurance policy maintained by appellant with appellee named as a beneficiary, if this is the court's intent. In other words, the trial court must comply with the requirements of R.C. 3105.18(B). If the court had some other intent, the court must make that intent more clear in its judgment entry. If necessary, the trial court should also clarify how appellant may reduce the value of the insurance policy so that it will be $0 after ten years.

## CONCLUSION

{¶ 93} Two of appellant's assignments of error have merit, at least in part. The trial court erred in stating that spousal support would increase on January 1, 2005, prior to the time that appellant would begin receiving Social Security benefits. This appears to be a clerical error, and the trial court judgment is hereby reversed and remanded so that the increase in spousal support to $1,500 may begin on the date that appellant begins receiving his Social Security benefits. The other error involves the court's requirement that appellant maintain a $75,000 life-insurance policy to secure the spousal-support award. The trial court's intent is not clear, in that it states that spousal support will terminate upon the death of either party, but essentially guarantees $75,000 worth of spousal support if appellant dies before the ten-year spousal-support period expires. Thus, the life-insurance requirement of the trial court judgment is also reversed, and the cause is remanded for a clarification from the trial court, and such clarification must conform to the requirements of R.C. 3105.18(B). Appellant's remaining assignments of error are overruled, and the remainder of the divorce decree is affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

VUKOVICH and DeGENARO, JJ., concur.