OPINION
{¶ 1} Defendant-appellant Martin Bertram appeals from a judgment and decree of divorce. Bertram contends that the trial court abused its discretion with regard to the awards of child and spousal support, and by ordering him to secure those obligations with an insurance policy. He further contends that the trial court erred in its determination of the division of property. *Page 2 
 {¶ 2} Plaintiff-appellee Karla Bertram, nka Bachi, has cross-appealed, contending that the trial court erred in its determination of the date of the end of the marriage and that the trial court abused its discretion by permitting Bertram to defer payment of a property equalization award for six-months.
 {¶ 3} We conclude that the trial court did not abuse its discretion with regard to the amount of child and spousal support awarded, nor in requiring Bertram to pay spousal support for a period of five years. We further conclude that the trial court acted within its discretion by requiring Bertram to secure his support obligations by maintaining an existing policy of life insurance. However, we conclude — and Bachi concedes — that the trial court did err by inadvertently miscalculating the amount of certain assets awarded to the parties, and thus, miscalculated the amount needed to equalize the property distribution.
 {¶ 4} With regard to Bachi's cross-appeal, we find no abuse of discretion in the trial court's determination of the duration of the marriage or in its decision allowing Bertram six months to pay a lump-sum asset equalization award.
 {¶ 5} Accordingly, the judgment of the trial court is modified, and is affirmed as modified. That portion of the judgment and divorce decree regarding the property equalization award is modified by reducing the amount of that payment to $526,087.50.
 I {¶ 6} Karla Bertram (now known as, and hereinafter referred to as, Bachi) and Martin Bertram were married on December 27, 1986. The parties have three children born of the marriage who were all minors at the time of the trial court proceedings. In *Page 3 
2005, Bachi filed a complaint for divorce. Hearings were held on two days in December, 2006, and one day in March, 2007. The magistrate entered a decision in July, 2007 in which Bachi was awarded custody of the children. Of relevance to this appeal, Bertram was ordered to pay the sum of $3,500 per month as child support. He was also ordered to pay the sum of $10,000 per month for a period of five years as spousal support. Bertram was awarded $1,283,408 in assets, while Bachi was awarded the sum of $194,896 in assets. Therefore, Bertram was ordered to pay the sum of $543,756 to Bachi as a means of equalizing the distribution of the parties debts and assets.
 {¶ 7} Both parties filed objections to the magistrate's decision, which were subsequently overruled by the trial court. The trial court adopted the decision of the magistrate and rendered judgment accordingly. Bertram appealed, and Bachi cross-appealed.
 II {¶ 8} Bertram's First Assignment of Error states as follows:
 {¶ 9} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING CHILD SUPPORT AS THE SAME IS NOT SUPPORTED BY THE EVIDENCE."
 {¶ 10} Bertram contends that the trial court abused its discretion with regard to the amount of child support. He argues that the trial court did not "set forth sufficient justification for [its] deviation" from the standard child support guidelines.
 {¶ 11} The combined income of the parties is greater than one hundred fifty-thousand dollars per year. Thus, the standard child support guidelines are not *Page 4 
applicable. Instead, the provisions of R.C. 3119.04 apply. R.C. 3119.04(B) provides:
 {¶ 12} "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 13} "Initially, R.C. 3119.04(B) `does not require any explanation of [the trial court's] decision unless it awards less than the amount awarded for combined incomes of $150,000.'" Guertin v. Guertin, Franklin App. No. 06AP-1101, 2007-Ohio-2008, quoting Cyr v. Cyr, Cuyahoga App. No. 84255, 2005-Ohio-504, at ¶ 56.
 {¶ 14} The record in this case shows that the parties and their children enjoyed a high standard of living during the term of the marriage. As noted by the magistrate, "the children since the separation are living more modestly in contrast to their life style when the parties were together. Their standard of living now is also wholly dependent upon [Bachi] receiving both child and spousal support the latter of which will terminate in the *Page 5 
not too distant future. Yet, [Bertram] still has significant discretionary income after accounting for income, personal living expenses, payment of taxes, social security, child and spousal support." Additionally, the record supports a finding that there is a great disparity between the income of Bertram and that of Bachi. Bachi stipulated to an annual income of $36,000, while Bertram's average annual income for the years 2004 through 2006 was slightly under $1,000,000. The total amount of child support awarded is $42,000 per year, which amounts to less than five per cent of Bertram's annual gross income.
 {¶ 15} Furthermore, it was discovered at trial, that Bertram had failed to disclose distributions received from an investment in a local surgical center. Bachi learned of the distributions during the trial, and presented evidence that Bertram actually received $158,450 in distributions, despite Bertram's testimony that he only received less than $30,000. Thus, the magistrate was faced with evidence that Bertram had failed to fully disclose all his sources of income, and that he did not testify accurately as to the value of the investment, which Bachi learned of "by chance." The magistrate was confronted with a situation in which it was not inconceivable that Bertram had still other sources of income that he had failed to disclose.
 {¶ 16} A trial court has discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390. To constitute an "abuse of discretion," the trial court must exhibit an attitude that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} We conclude that the trial court's decision was within its discretion. We *Page 6 
agree that the "family income and the children's lifestyles call for" an award of child support in the amount of $1,666 per month per child. This amount will permit the children to "maintain a standard of living that [they] likely would have enjoyed if the parties had not divorced."
 {¶ 18} Bertram's First Assignment of Error is overruled.
 III {¶ 19} Bertram's Second Assignment of Error provides:
 {¶ 20} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ESTABLISHING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT."
 {¶ 21} Bertram contends that the trial court's determination of the amount and duration of spousal support was excessive. He argues that "the property division alone justifies a duration of a spousal support obligation far less than the five years ordered by the trial court."
 {¶ 22} The statute governing spousal support, R.C. 3105.18, provides, in pertinent part:
 {¶ 23} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 24} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; *Page 7 
 {¶ 25} "(b) The relative earning abilities of the parties;
 {¶ 26} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 27} "(d) The retirement benefits of the parties;
 {¶ 28} "(e) The duration of the marriage;
 {¶ 29} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 30} "(g) The standard of living of the parties established during the marriage;
 {¶ 31} "(h) The relative extent of education of the parties;
 {¶ 32} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 33} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 34} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 35} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 36} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 37} "(n) Any other factor that the court expressly finds to be relevant and *Page 8 
equitable.
 {¶ 38} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income."
 {¶ 39} In reaching its determination on spousal support, the trial court found that Bachi could generate income from the $543,756 to be paid to her by Bertram as a property equalization award. The trial court further noted, as previously stated, that Bertram earns close to $1,000,000 annually, while Bachi has an imputed wage of $36,000 per year. Additionally, both parties are relatively young with no impairments and can "anticipate a long working life until retirement." However, the trial court found that Bachi's relative earning ability is "significantly less than that of [Bertram, and that there] is not any foreseeable change soon of a substantial nature" in that ability. Bertram's retirement accounts are significantly larger than Bachi's. The trial court found that the parties were married for almost nineteen years, and they enjoyed a "good standard of living during the marriage." Bachi's monthly expenses are greater than $8,000. Thus, the court found that it is "reasonable and appropriate" to award spousal support to Bachi.
 {¶ 40} As with child support orders, appellate review of an award of spousal support is limited to whether the trial court abused its discretion. Dunham v. Dunham, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 18. Our review of the record demonstrates that there is competent, credible evidence supporting the trial court's decision. The trial court considered all of the relevant statutory factors. While the support order may be considered generous, we find no abuse of discretion. Therefore, Bertram's Second *Page 9 
Assignment of Error is overruled.
 IV {¶ 41} The Third Assignment of Error raised by Bertram is as follows:
 {¶ 42} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REQUIRING APPELLANT TO SECURE THE SPOUSAL SUPPORT OBLIGATION WITH LIFE INSURANCE."
 {¶ 43} As part of the divorce decree, the trial court ordered Bertram to maintain his existing policy of whole life insurance, and to name Bachi as the beneficiary to ensure the payment of spousal support and child support. Bertram contends that this is error. In support, he citesWaller v. Waller (2005), 163 Ohio App. 3d 303, for the proposition that a trial court cannot order a spousal support obligor to maintain life insurance as security for a support obligation when that obligation expressly terminates upon the death of the obligor.
 {¶ 44} We find this case distinguishable from Waller. In that case, life insurance was required to be maintained in full during the ten-year duration of a spousal support award, only, with no provision for the gradual reduction of the amount of life insurance required as the spousal support awarded was paid. The appellate court found ambiguity as to whether the trial court intended that the spousal support should continue after the obligor's death, and remanded the cause for clarification of that issue.
 {¶ 45} In the case before us, the trial court ordered Bertram to maintain an existing policy in order to secure both spousal and child support. It is conceivable that Bertram could accrue arrearages in either type of support that would remain due and *Page 10 
payable even after his death. Furthermore, unlike in Waller v.Waller, supra, where a 64-year-old obligor was required to purchase life insurance to secure payment of spousal support, presumably at substantial out-of-pocket expense, in the case before us Bertram was merely ordered to maintain an existing whole life insurance policy where, as the magistrate noted, "the premium has been paid by the interest on the cash value," meaning that Bertram can maintain this life insurance policy without any out-of-pocket expense.
 {¶ 46} Bertram's Third Assignment of Error is overruled.
 V {¶ 47} Bertram's Fourth Assignment of Error states as follows:
 {¶ 48} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DETERMINATION, NATURE AND CALCULATION AS TO THE AMOUNT THE DEFENDANT IS TO PAY THE PLAINTIFF IN ORDER TO EQUALIZE ASSETS."
 {¶ 49} Bertram contends that the trial court erred with regard to the amount awarded to Bachi that was intended to equalize the division of assets between the parties. Specifically, Bertram claims that the trial court failed to properly value certain assets, resulting in an improper award of assets to Bachi.
 {¶ 50} We have reviewed the record, and agree that the trial court erred with regard to two items. Specifically, the trial court failed to include a $35,000 note held by Bachi as an asset, and also when it inadvertently included a $337 Fifth Third Bank retirement account in Bertram's assets, when it properly was one of Bachi's assets. Thus, the trial court undervalued the amount of assets awarded to Bachi by $35,337, *Page 11 
and therefore erred in its calculation of the amount needed to equalize the asset distribution. Instead of awarding Bachi the sum of $543,756, the trial court should have awarded the sum of $526,087.50[1]
 {¶ 51} Bertram also complains that the trial court abused its discretion by awarding Bachi approximately $198,000 more in tax-deferred and after-tax assets than it awarded to him. He contends that the trial court should have considered the tax consequences and equalized the division of these funds.
 {¶ 52} Generally, a trial court must consider "the tax consequences of the property division upon the respective awards to be made to each spouse." R.C. 3105.171(F)(6). However, this court has stated that a trial court does not abuse its discretion by not taking note of the tax consequences if the evidence in that regard is speculative. James v.James (1995), 101 Ohio App. 3d 668, 688, citing Day v. Day (1988)40 Ohio App. 3d 155, 159. Here, we agree with the trial court that "the scant evidence in the record concerning the tax consequences of the overall property division would make such a finding purely speculative."
 {¶ 53} Finally, Bertram raises a question regarding the valuation of two accounts held with A.G. Edwards and one account held at National City Bank. He contends that the trial court failed to place an accurate value on these assets. However, we find no abuse of discretion with regard to the trial court's valuation, because there is competent evidence in the record to support its determination. *Page 12 
 {¶ 54} Bertram's Fourth Assignment of Error is sustained in part and overruled in part. The portion of the judgment of divorce regarding property equalization will be amended to state that Bertram shall pay to Bachi a property equalization award in the sum of $526,087.50.
 VI {¶ 55} Bachi's First Assignment of Error on her cross-appeal states:
 {¶ 56} "THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE DE FACTO END OF THE MARRIAGE."
 {¶ 57} Bachi contends that the trial court abused its discretion when it ruled that the marriage ended on August 14, 2005, rather than on March 23, 2007, the date of the final hearing. She contends that this unfairly affected the division of assets because Bertram was thereby allowed to accumulate additional assets that the trial court did not properly divide.
 {¶ 58} A trial court's determination of the duration of the marriage is reversible only if it constitutes an abuse of discretion. Bowen v.Bowen (1999), 132 Ohio App. 3d 616, 631; R.C. 3105.171(A)(2). As noted by the trial court, the evidence in this case shows that the "parties' finances were separated by the end of March or the first part of April 2005"; that Bachi filed for divorce on June 8, 2005; and that Bachi purchased and moved into a separate residence as of August 14, 2005. The trial court further found that August 14, 2005 was the date that the "parties had ceased contributing to each other for each others' benefit as would partners in marriage."
 {¶ 59} We find no abuse of discretion. The trial court's determination is *Page 13 
supported by reasonable, competent, credible evidence regarding the ending date of the marriage and the equitable date for valuation of the assets. Furthermore, the trial court took into consideration Bertram's accumulation of assets when it ordered him to pay over $500,000 in order to equalize the distribution of assets.
 {¶ 60} Bachi's First Assignment of Error on her cross-appeal is overruled.
 VII {¶ 61} Bachi's Second Assignment of Error on her cross-appeal provides:
 {¶ 62} "THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING HUSBAND SIX MONTHS TO PAY WIFE THE LUMP SUM TO EQUALIZE THE DIVISION OF THE MARITAL ASSETS."
 {¶ 63} Bachi contends that the trial court erred when it gave Bertram six months to pay her the property equalization award. She contends that Bertram had the ability to pay this sum immediately, and that there was no equitable reason for the delay.
 {¶ 64} We disagree. Bertram was required to pay over $500,000 to Bachi as a lump-sum payment. We do not consider it an abuse of discretion to permit Bertram a six-month period in which to make a payment of this magnitude. Furthermore, we find no support in the record for the proposition that Bertram could make the payment any earlier. Accordingly, Bachi's Second Assignment of Error is overruled.
 VIII {¶ 65} Bertram's Fourth Assignment of Error having been sustained in part, and all other assignments of error, of both parties, having been overruled, the trial court's *Page 14 
judgment and decree of divorce is Modified by reducing the property equalization award contained therein from $543,756 to $526,087.50. As modified, the judgment of the trial court is Affirmed. BROGAN, J., and WOLFF, J., concur.
[1] Bachi admits that the trial court erred with regard to these two assets, and agrees that the amount of the equalization award should be reduced by the amount of those assets.
Copies mailed to:
Charles D Lowe
David M. McNamee
 Hon. Thomas J. Capper *Page 1