OPINION
{¶ 1} Plaintiff-appellant Steven Pickel appeals, pro se, from a judgment and decree of divorce. Pickel contends that the trial court abused its discretion with regard to the award of custody and the amount of support owed. He also contends that the trial court lacked subject-matter jurisdiction over the divorce proceeding, due to a lack of *Page 2 
proper venue. Finally, he contends that his counsel did not provide effective assistance.
 {¶ 2} We conclude that the trial court did not abuse its discretion with regard to its determination of custody or support. We further conclude that the claim of lack of subject-matter jurisdiction is without merit. Finally, we can find no support for the claim of ineffective assistance of counsel. Accordingly the judgment of the trial court is Affirmed.
 I {¶ 3} Pickel and Elghouati were married on August 20, 2004, and separated by October of the same year. Pickel filed an action for divorce on May 19, 2005. Elghouati gave birth to a child on June 9, 2005; paternity testing established Pickel as the father.
 {¶ 4} A hearing was held on March 20, 2007 on the issues of allocation of parental rights, child support and the termination date of the marriage; all other issues were resolved by prior agreement. Following the hearing, the magistrate issued a decision in which it designated Elghouati as the custodial and residential parent. The decision also set Pickel's child support obligation at $632 per month.
 {¶ 5} Pickel filed objections to the magistrate's decision. The trial court overruled the objections, and adopted the magistrate's decision as the judgment of the trial court. Pickel appeals.
 II {¶ 6} Pickel's First Assignment of Error states as follows:
 {¶ 7} "THE FINDING THAT [THE TRIAL COURT] HAD JURISDICTION OVER EACH OF THE PARTIES AND THE SUBJECT MATTER OF THIS ACTION IS *Page 3 
AGAINST THE WEIGHT OF EVIDENCE PRESENTED AND DOCUMENTATION SUPPLIED AND IS AN ABUSE OF DISCRETION."
 {¶ 8} Pickel appears, by this assignment of error, to argue that the Montgomery County Common Pleas Court lacked subject-matter jurisdiction over this divorce action because it was the improper venue for the prosecution of the case. In support, Pickel contends that he resided in Greene County at all times relevant hereto, and that Elghouati resided in Miami County during the pendency of the divorce action.
 {¶ 9} "Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits, while venue connotes the locality where the suit should be heard." Morrison v. Steiner (1972), 32 Ohio St.2d 86, 87, citations omitted. "Subject-matter jurisdiction defines the competency of a court to render a valid judgment in a particular action." Id.
 {¶ 10} R.C. 3105.03, which governs jurisdiction and venue for divorce proceedings, provides:
 {¶ 11} "The plaintiff in actions for divorce and annulment shall have been a resident of the state at least six months immediately before filing the complaint. Actions for divorce and annulment shall be brought in the proper county for commencement of action pursuant to the Rules of Civil Procedure. The court of common pleas shall hear and determine the case, whether the marriage took place, or the cause of divorce or annulment occurred, within or without the state."
 {¶ 12} Civ. R. 3(B)(9) states that "in actions for divorce, annulment, or legal separation, [proper venue lies] in the county in which the plaintiff is and has been a *Page 4 
resident for at least ninety days immediately preceding the filing of the complaint."[1]
 {¶ 13} Improper venue does not deprive a court of its jurisdiction to hear an action. State ex rel. Florence v. Zitter, 106 Ohio St.3d 87,2005-Ohio-3804, ¶ 23. Further, the failure to timely raise a challenge to venue results in a waiver of that issue. Durrah v. Durrah, Butler App. No. CA2005-06-144, 2006-Ohio-2138, ¶ 12; Civ. R. 12(H).
 {¶ 14} "In assessing a manifest weight challenge in the civil context, we will not reverse a judgment as being against the manifest weight of the evidence where the judgment is `supported by some competent, credible evidence going to all the essential elements of the case.'"In re S.S., Montgomery App. No. 22980, 2008-Ohio-294, ¶ 47, citingGevedon v. Ivey, 172 Ohio App.3d 567, 579, 2007-Ohio-2970, at ¶ 54.
 {¶ 15} In this case, Pickel availed himself of the jurisdiction of the Montgomery Common Pleas Court by filing, as plaintiff, the action in that court. He failed to raise any issue regarding venue until he filed objections to the magistrate's decision — almost three years after filing the action. Moreover, his complaint alleged that both parties had resided in Montgomery County "for more than six months immediately preceding the filing of [the Complaint for divorce]." At the hearing on the matter, Pickel testified under oath that both he and Elghouati had resided in Montgomery County for the six months prior to filing the complaint. The magistrate accepted this testimony, and proceeded with the hearing.
 {¶ 16} Pursuant to R.C. 3105.30, the Montgomery Common Pleas Court had subject-matter jurisdiction over this issue as a court of competent jurisdiction over *Page 5 
divorce proceedings since Pickel had resided within the State of Ohio for the requisite six months prior to filing the divorce action. Furthermore, the evidence in the record supports a finding that the venue was proper. From our review of the record, we cannot say that the magistrate or the trial court erred in accepting Pickel's sworn testimony regarding the issue of venue. Indeed, in his objections to the magistrate's decision, Pickel's objection to venue does not make a claim that the alleged lack of venue created any issue with regard to subject-matter jurisdiction. Furthermore, the record before us does not contain any testimonial or documentary evidence to invalidate the magistrate's finding.
 {¶ 17} Pickel's First Assignment of Error is overruled.
 III {¶ 18} Pickel's Second Assignment of Error provides:
 {¶ 19} "THE FINDING THAT IT IS IN [THE MINOR CHILD'S] BEST INTEREST THAT THE DEFENDANT BE HER RESIDENTIAL PARENT AND LEGAL CUSTODIAL [SIC] AND THE PLAINTIFF HAVE PARENTING TIME IN ACCORDANCE WITH THIS COURT'S STANDARD ORDER OF PARENTING WITH EXCHANGES CONTINUING THROUGH ERMA'S HOUSE IS AGAINST THE WEIGHT OF THE EVIDENCE AND THE DOCUMENTATION PRESENTED AND IS AN ABUSE OF DISCRETION."
 {¶ 20} Pickel contends that the trial court abused its discretion with regard to the allocation of parental rights. In support, he argues that Elghouati should not have been awarded custody, because she failed to permit him visitation with the child during the pendency of the divorce action. He further notes that Elghouati is in the United States *Page 6 
on a visa that was set to expire in August, 2007.
 {¶ 21} "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Miller vMiller (1988), 37 Ohio St. 3d 71, 74. The issue of credibility is "even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997), 77 Ohio St.3d 415, 419. Therefore, a reviewing court will not reverse a custody determination unless the trial court has abused its discretion. Beismann v. Beismann, Montgomery App. No. 22323, 2008-Ohio-984, at ¶ 20. The term "abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 22} R.C. 3109.04(F)(1) provides that a court shall consider all relevant factors, including those outlined by this section, when determining the best interest of a child involved in a custody dispute. As pertinent to the instant case, these factors are as follows:
 {¶ 23} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 24} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; *Page 7 
 {¶ 25} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 26} " * * * *
 {¶ 27} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 28} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights."
 {¶ 29} In this case, it is clear that both parties wished to be designated as the primary custodial and residential parent. It is further clear that the parties were not amenable to a shared-parenting plan. Both parties have a good relationship with the child. However, Elghouati had acted as the child's primary custodial parent and caregiver, and during that time the child has been "healthy, normal, well-adjusted and happy." Although Elghouati was found in contempt of court for failing to "obey the parenting time order," the child's guardian ad litem recommended that she be awarded custody of the child, with visitation awarded to Pickel. The trial court clearly considered the fact that Elghouati was in the process of applying for a "green card," (permanent residency status in the United States). There is also credible evidence that Elghouati intends to remain in Ohio, and that she has family located in the Cincinnati area. The trial court specifically stated that Elghouati could not "remove [the child] from this country without prior court permission."
 {¶ 30} As we stated before, a trial court is accorded broad discretion in custody matters. Here, although we are troubled by the evidence suggesting that Elghouati initially hindered Pickel's visitation, it appears that this problem has been dealt with. Furthermore, the record suggests that Pickel created some of the issues regarding *Page 8 
visitation by failing to return the child to Elghouati in a timely manner following visitation, and by failing to properly communicate with Elghouati and her counsel.
 {¶ 31} The trial court was in the best position to examine the information before it, to decide credibility, and to choose to credit the testimony and evidence indicating that Elghouati was the more suitable custodian and residential parent. The trial court also was able to determine whether a shared parenting plan was in the child's best interest at that point in time. We do not conclude that the trial's court decision amounts to an abuse of discretion.
 {¶ 32} We also note that Pickel appears to contend that the guardian ad litem was biased against him and that the guardian ad litem did not consider all pertinent factors in rendering his report to the trial court. The trial court specifically rejected this claim, and we do not find evidence in the record to support this claim.
 {¶ 33} Pickel's Second Assignment of Error is overruled.
 IV {¶ 34} Pickel's Third Assignment of Error states:
 {¶ 35} "THE FINDING THAT THE AMOUNT OF CHILD SUPPORT CALCULATED PURSUANT TO THE BASIC CHILD SUPPORT SCHEDULE IS JUST, REASONABLE, APPROPRIATE AND IN THE BEST INTEREST OF THE CHILD IS AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED AND THE DOCUMENTATION PROVIDED AND IS AN ABUSE OF DISCRETION."
 {¶ 36} Pickel contends that the trial court erred in calculating the amount of child support. He contends that Elghouati did not supply the trial court with her actual income *Page 9 
information. He further claims that the trial court erred in ordering him to pay an additional sum of one hundred and twenty-six dollars per month as a child support arrearage.
 {¶ 37} A trial court has discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Bertram v. Bertram, Clark App. No. 2007-CA-135, 2009-Ohio-55, ¶ 16, citing Pauly v. Pauly (1997),80 Ohio St.3d 386, 390.
 {¶ 38} A review of the trial court's decision indicates that the trial court considered the appropriate information in determining the amount of child support. The evidence demonstrates that Pickel earns a base salary of $56,548 per year. He pays for the child's health insurance, and also pays child support for three other children from a prior marriage. The evidence further supports a finding that Elghouati is currently unemployed and that she had an adjusted gross income of under $2,000 in 2006. Elghouati is receiving assistance from the Job Center and is attending Sinclair Community College. There is no evidence that she is capable of earning more than minimum wage at this time. Finally, there is competent evidence that at the time of the hearing Pickel had a child support arrearage of $561.23, which the trial court ordered paid.
 {¶ 39} We have reviewed the record, and find that it supports the trial court's decision with regard to the amount of child support. The trial court did not abuse its discretion in determining the amount of the parties' income. The trial court also took account of the fact that Pickel had other child support obligations, and the trial court correctly used the statutory guidelines in calculating the amount of support due which *Page 10 
totaled $632 per month. Therefore, the Third Assignment of Error is overruled.
 V {¶ 40} The Fourth Assignment of Error is as follows:
 {¶ 41} "COUNSEL FOR PICKEL FAILED TO APPROPRIATELY REPRESENT HIS INTERESTS DURING THE PENDENCY OF THIS MATTER."[2]
 {¶ 42} Pickel claims that his attorney did not appropriately represent his interests. In support, he states that his attorney "was a waiting [sic] sentencing to Federal Prison for tax evasion, [and thus] did not represent [him] to her fullest because of her own pending litigation."
 {¶ 43} A review of the record shows that Pickel was represented by Anthony Cicero at the inception of this action in May, 2005. Cicero withdrew as counsel in August, 2005. Thereafter, Trisha Duff entered her appearance as counsel on November 8, 2005. In January, 2007, Duff also withdrew as counsel. Deborah Schram entered her appearance as counsel on February 22, 2007. The hearing before the magistrate was held on March 20, 2007, with Schram as counsel. Thereafter, Bajwa Loveleen entered an appearance, and also withdrew as counsel. During the periods in which Pickel was not represented by counsel, he filed numerous pro se motions and documents.
 {¶ 44} Pickel fails to present any competent evidence to support the claim that Attorney Schram failed to appropriately represent him during her tenure as his counsel. We have reviewed the pleadings and the transcript of the hearing and note that there is *Page 11 
nothing to support Pickel's claim of ineffective counsel. Indeed, the transcript reveals that Schram aggressively, and appropriately, represented Pickel. The mere fact that the outcome was not as Pickel hoped does not give rise to a claim that counsel was ineffective.
 {¶ 45} Pickel's Fourth Assignment of Error is overruled.
 VI {¶ 46} All of Pickel's assignments of error having been overruled, the judgment of the trial court is Affirmed.
DONOVAN, P.J., and BROGAN, J., concur.
[1] Pickel's appellate brief incorrectly cites this as Ohio Civil Rule 82(B) rather than 3(B).
[2] Although Pickel does not expressly assign this as error, it is clear from his brief that he intends this court to consider this argument as an assignment of error. *Page 1